IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TRACER IMAGING LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 24-1386-JCB |
| v. | ) | |
| | ) | DEMAND FOR JURY TRIAL |
| MIXTILES, LTD. and MIXTILES USA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS MIXTILES, LTD. AND MIXTILES USA, INC.'S
ANSWER TO TRACER IMAGING LLC'S FIRST AMENDED
COMPLAINT FOR PATENT INFRINGEMENT,
<u>AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS</u>**

Pursuant to Federal Rules of Civil Procedure 12 and 13 Defendants Mixtiles, Ltd. and Mixtiles USA, Inc.'s (collectively "Mixtiles"), hereby provides the following answer, affirmative defenses, and counterclaims to the First Amended Complaint ("FAC") (D.I. 18) filed by Tracer Imaging LLC ("Tracer") in the above referenced action. All statements or responses in this document are made on behalf of Mixtiles only. None of the statements in this document are made on behalf of any other entity in this action. Pursuant to Federal Rule of Civil Procedure 8(b), Mixtiles denies all allegations in the FAC, except as specifically admitted below.

**<u>NATURE OF THE CASE</u>**

1.     This is a civil action for patent infringement arising under the Patent Act of the United States, 35 U.S.C. § 1, *et seq*.

**<u>RESPONSE TO NO. 1</u>:**

Mixtiles admits that Tracer purports to plead claims against Mixtiles pursuant to the Patent Act of the United States, 35 U.S. C. § 1, *et seq*. To the extent any further response to this paragraph is required, Mixtiles denies the remaining allegations and legal conclusions.

2.     This action arises out of Mixtiles' infringement of Tracer's United States Patent No. 12,108,889 (attached as Exhibit A) (the "'889 Patent" or the "Asserted Patent").

**RESPONSE TO NO. 2:**

Mixtiles admits that the FAC alleged patent infringement of U.S. Patent No. 12,108,889 and that a copy of the same was attached as Exhibit A to the FAC. To the extent that any further response to this paragraph is required, Mixtiles denies the remaining allegations and legal conclusions.

## THE PARTIES

3.     Tracer is a Delaware limited liability company having a principal place of business at 712 Kitchawan Road, Ossining, New York, 10562, United States.

**RESPONSE TO NO. 3:**

Mixtiles lacks knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 3 and, on that basis, denies them.

4.     Upon information and belief, Defendant Mixtiles, Ltd. ("Mixtiles, Ltd.") is a private limited company organized under the laws of Israel, with its principal place of business located at 54/3 Ahad Haam, Tel Aviv-Jaffa, 6520216, Israel, and with registration number 515362044.

**RESPONSE TO NO. 4:**

Admitted.

5.     Upon information and belief, Defendant Mixtiles USA, Inc. ("Mixtiles USA") is a Delaware corporation, with its principal place of business at 1313 N Market St Ste 5100 Wilmington, Delaware, 19801.

**RESPONSE TO NO. 5:**

Admitted.

6.     Upon information and belief, Mixtiles USA is a wholly owned subsidiary of Defendant Mixtiles, Ltd.

**RESPONSE TO NO. 6:**

Admitted.

7.    Mixtiles, Ltd. advertises its products and services via its website, www.mixtiles.com, which lists Mixtiles USA as a party of a contract with any website user in the United States in its Terms of Service, https://www.mixtiles.com/terms-of-service (attached as Exhibit B).

**RESPONSE TO NO. 7:**

The content of the identified website speaks for itself. Mixtiles admits that a copy of the terms of service was attached as Exhibit B to the FAC. To the extent any further response to paragraph 9 is required, Mixtiles denies the remaining averments and legal conclusions.

8.    Upon information and belief, Mixtiles, Ltd. effectively controls the sales of Mixtiles USA.

**RESPONSE TO NO. 8:**

Admitted.

9.    The Mixtiles website's terms of service provides that website users are contracting with different entities of Mixtiles based on where the website users are located. If a user is from the European Union, the user is contracting with Mixtiles B.V.; if a user is in the U.S., the user is contracting with Mixtiles USA; and if a user is from anywhere else, the user is contracting with Mixtiles, Ltd. https://www.mixtiles.com/terms-of-service.

**RESPONSE TO NO. 9:**

The content of the identified website speaks for itself. To the extent any further response to paragraph 9 is required, Mixtiles denies the remaining averments and legal conclusions.

10.    The Mixtiles website also provides that their products are made at Mixtiles' factories in the US, UK, and Germany, and Mixtiles operate exclusively online and do not have a physical retail location which "allows [Mixtiles] to bring [the Mixtiles products] directly to [the customers'] door, no matter where [the customers] are." https://help.mixtiles.com/en/articles/3487863-faq-where-is-mixtiles-located (attached as Exhibit C).

**RESPONSE TO NO. 10:**

The content of the identified website speaks for itself. Mixtiles admits that a copy of the content was attached as Exhibit C to the FAC. To the extent any further response to paragraph 10 is required, Mixtiles denies the remaining averments.

11.    The Mixtiles website provides that Mixtiles "ship [their products] to almost every corner of the globe" listing over 160 countries that Mixtiles ship to. https://help.mixtiles.com/en/articles/3488571-faq-which-courier-do-you-use-and-where-do-youship (attached as Exhibit D).

**RESPONSE TO NO. 11:**

The content of the identified website speaks for itself. Mixtiles admits that a copy of the identified website was attached as Exhibit D to the FAC. To the extent any further response to paragraph 11 is required, Mixtiles denies the remaining averments.

12.    Mixtiles, Ltd. is listed as the copyright owner of the Mixtiles website, www.mixtiles.com.

**RESPONSE TO NO. 12:**

Admitted.

13.    The Mixtiles website also provides a customer help section which includes instructions on ordering or using Mixtiles products, including instruction videos and contact information for customer help. https://help.mixtiles.com/en/ (attached as Exhibit E).

**RESPONSE TO NO. 13:**

The content of the identified website speaks for itself. Mixtiles admits that a copy of the content was attached as Exhibit E to the FAC. To the extent any further response to paragraph 13 is required, Mixtiles denies the remaining averments.

14.    As contact information for customer help, the Mixtiles website provides a single email (hi@mixtiles.com) and a chat feature on the website, without regard to which Mixtiles entity the customer contracted with.  https://help.mixtiles.com/en/articles/3479154-all-about-mixtiles (attached as Exhibit F).

**RESPONSE TO NO. 14:**

The content of the identified website speaks for itself. Mixtiles admits that a copy of the content was attached as Exhibit F to the FAC. To the extent any further response to paragraph 14 is required, Mixtiles denies the remaining averments.

15.    The Mixtiles website's terms of service (https://www.mixtiles.com/terms-ofservice) lists only one physical address for written refund requests, other than an email address

and a chat feature on its website: Ahad Ha'Am 54, Tel Aviv-Yafo, Israel 6520216. This is the same address with the principal place of business of Mixtiles, Ltd. The address shows that all refunds are handled by Mixtiles, Ltd. without regard to which Mixtiles entity a customer contracted with.

**RESPONSE TO NO. 15:**

The content of the identified website speaks for itself. To the extent any further response

to paragraph 15 is required, Mixtiles denies the remaining averments and legal conclusions.

16. Mixtiles' mobile application "Mixtiles – Photo Tiles" lists Mixtiles, Ltd. as a developer, a seller, and a copyright owner of the application. https://apps.apple.com/us/app/mixtiles-photo-tiles/id583099157 (attached as Exhibit G).

**RESPONSE TO NO. 16:**

The content of the identified website speaks for itself. Mixtiles admits that a copy of the

content was attached as Exhibit G to the FAC. To the extent any further response to paragraph 16

is required, Mixtiles denies the remaining averments.

17. Upon information and belief, Mixtiles USA is the United States sale and distribution department of Mixtiles, Ltd., and serves the purpose of selling and marketing the photo frame products and services provided by Mixtiles, Ltd. to customers in the United States including in the District of Delaware ("this District").

**RESPONSE TO NO. 17:**

Admitted.

18. Mixtiles, individually and collectively, make, use, sell, offer for sale in the United States, and import into the United States, including in this District, photo frame products mounted on walls, including repositionable frame systems that infringe the '889 Patent.

**RESPONSE TO NO. 18:**

Denied.

**JURISDICTION**

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 271, *et seq.*

**RESPONSE TO NO. 19:**

While Mixtiles does not contest subject matter jurisdiction, the allegations of this paragraph

are legal conclusions for which no answer is required or given.

20.    This Court has personal jurisdiction over Mixtiles USA because Mixtiles USA is Delaware corporation doing business in the State of Delaware and has (1) substantial, continuous, and systematic contacts within this District, (2) maintains a broad distribution network within this District, and (3) enjoys substantial income from the sales of infringing products within this District in violation of 35 U.S.C. § 271, *et seq*.

**RESPONSE TO NO. 20:**

While Mixtiles does not contest personal jurisdiction over Mixtiles USA, the allegations

of this paragraph are legal conclusions for which no answer is required or given.

21.    This Court has personal jurisdiction over Mixtiles, Ltd., a foreign corporation, because, upon information and belief, Mixtiles USA is a subsidiary of Mixtiles, Ltd. and is either an agent or a mere department of Mixtiles, Ltd. which has effective control over Mixtiles USA. Specifically, upon information and belief, Mixtiles, Ltd. has affiliated itself with Mixtiles USA, which sells products and renders services within this District on behalf of Mixtiles, Ltd. that go beyond mere solicitation and are sufficiently important to Mixtiles, Ltd. that Mixtiles, Ltd. Itself would perform equivalent services if no United States representative were available.

**RESPONSE TO NO. 21:**

While Mixtiles does not contest personal jurisdiction over Mixtiles, Ltd., the allegations of

this paragraph are legal conclusions for which no answer is required or given.

22.    On information and belief, Mixtiles, Ltd. markets and intends to market, distribute, and sell the infringing products in this District with the reasonable expectation, knowledge, and intent that such products will be purchased and used by consumers in this District. Mixtiles have thus purposefully targeted their conduct to cause harm to Tracer in the State of Delaware, and particularly in this District.

**RESPONSE TO NO. 22:**

To the extent this paragraph calls for legal conclusions, no response is required. Mixtiles

admits that it markets and intends to market, distribute and sell its products in this District. Except

as specifically admitted and to the extent that a response is required, Mixtiles denies any remaining

allegation in this paragraph.

## PLAINTIFF'S BUSINESS AND THE ASSERTED PATENT

23.     Tracer has for over twenty (20) years been a global leader providing printing services including lenticular printings in large and small formats, printing photos for wall décor frames, and products that are created through the services such as motion pictures and boxes and key chains with those printings. Tracer's services and products are utilized around the world.

**RESPONSE TO NO. 23:**

Mixtiles lacks knowledge or information sufficient to form a belief as to the truth of the

averments of this paragraph and denies them on that basis.

24.     Tracer was founded in White Plains, New York, originally providing lenticular printing services and lenticular products. Over time, Tracer has expanded into retail photo space, such as photo products and décor products. The photos and décor products by Tracer are currently sold in over 7,000 retail locations across the nation and are sold worldwide. Among Tracer's products offered for sale in the United States and in this District are the TilePix® 8x8 and TilePix® Glass Prints repositionable frame systems, more particularly magnetic pressure adhesive wall hanging systems whereby the frame can be repositioned on a wall relative to the magnetic mat adhered to the wall. Tracer has invented new technologies in these areas through extensive investment in research and development for more than a decade and maintains a global patent portfolio. The following Tracer patent is asserted in this action.

**RESPONSE TO NO. 24:**

Mixtiles lacks knowledge or information sufficient to form a belief as to the truth of the

averments of this paragraph and denies them on that basis.

### U.S. Patent No. 12,108,889

25.     Tracer owns by assignment all rights, title and interest in the '889 Patent, entitled "Magnetic Framing System," and holds the right to sue and recover damages for infringement thereof, including for past infringement. The '889 Patent duly and lawfully issued on October 8, 2024, with Charles Phillips and Steven M. Spiro listed as the inventors. The '889 Patent issued from U.S. Application No. 18/133,801, which was filed on April 12, 2023 and claims priority to U.S. Application No. 17/140,254, filed on January 4, 2021, now the U.S. Patent No. 11,641,957, which claims priority to U.S. Provisional Application 62/957,589, filed on January 6, 2020 and U.S. Provisional Application No. 62/957,195, filed on January 4, 2020. A true and correct copy of the '889 Patent is attached hereto as Exhibit A and made a part hereof.

**RESPONSE TO NO. 25:**

Mixtiles admits that '889 Patent was issued on October 8, 2024, with Charles Phillips and

Steven M. Spiro listed as the inventors. Mixtiles admits that the '889 Patent issued from U.S.

Application No. 18/133,801, which was filed on April 12, 2023 and claims priority to U.S. Application No. 17/140,254, filed on January 4, 2021, now U.S. Patent No. 11,641,957, which claims priority to U.S. Provisional Application 62/957,589, filed on January 6, 2020 and U.S. Provisional Application No. 62/957,195, filed on January 4, 2020. To the extent further response is required to this paragraph, Mixtiles denies the allegations to the extent they call for legal conclusions or because Mixtiles lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

26.    The '889 Patent is directed to a repositionable frame system comprising, *inter alia*, a repositionable wall mount including a first magnetic element, and a frame including a second magnetic element that is magnetically attracted to the first magnetic element and a border frame section, wherein the repositionable wall mount includes a layer of foam and a magnetically receptive rubber layer that is bonded to the layer of foam.

**RESPONSE TO NO. 26**:

The '889 Patent speaks for itself. To the extent any further response to paragraph 26 is required, Mixtiles denies the remaining averments and legal conclusions.

27.    In particular, claim 1 of the '889 Patent claims "A repositionable frame system comprising: a repositionable wall mount configured for being repositionably secured to a support surface, the repositionable wall mount including a first magnetic element; and a frame having a rear face that includes a second magnetic element that is magnetically attracted to the first magnetic element resulting in a magnetic coupling between the frame and the repositionable wall mount; wherein the frame has a border frame section that defines an outer periphery of the frame, the rear face of the frame including a center section disposed internal to the border frame section which protrudes outwardly from the center section, the second magnetic element being located within the center section and being offset and spaced from the border frame section so as to define a border area that surrounds the second magnetic element and extends from an outer peripheral edge of the second magnetic element to the border frame section; wherein the repositionable wall mount includes a layer of foam; a repositionable adhesive coated over the layer of foam and configured for contacting the support surface and allowing repositioning of the repositionable wall mount; and a magnetically receptive rubber layer that is permanently bonded to the layer of foam." Exhibit A, The '889 Patent, Col. 7, lines 21-44.

**RESPONSE TO NO. 27**:

The '889 Patent speaks for itself. To the extent any further response to paragraph 27 is required, Mixtiles denies the remaining averments.

28.    The '889 Patent claim 1 covers at least Tracer's TilePix® 8x8 repositionable frame systems, which is offered for sale and/or sold throughout the United States including in this District.

**RESPONSE TO NO. 28:**

Mixtiles lacks knowledge or information sufficient to form a belief as to the truth of the

allegations of this paragraph and denies them on that basis.

29.    The '889 Patent is an asset of significant value to Tracer and presents a barrier to entry to Tracer's competitors in the repositionable frame system market and enhances Tracer's reputation in the industry as an innovator and an exclusive source of repositionable frame systems.

**RESPONSE TO NO. 29:**

Mixtiles lacks knowledge or information sufficient to form a belief as to the truth of the

allegations of this paragraph and denies them on that basis.

30.    The inability to exclude others from practicing the invention covered by the '889 Patent would erode Tracer's market share in repositionable frame systems and harm Tracer's reputation in the industry as an innovator and supplier of repositionable frame systems to such an extent that such harm would not be fully compensable by money damages, and also would erode the '899 patent's value in a way that defies precise measurement. This statutory right to exclude is a fundamental aspect of patent protection, offering a unique benefit that cannot be fully captured through monetary damages.

**RESPONSE TO NO. 30:**

Mixtiles denies the allegations of this paragraph to the extent they call for legal

conclusions. Further, Mixtiles lacks knowledge or information sufficient to form a belief as to the

truth of the remaining allegations of this paragraph and denies them on that basis.

## MIXTILES' INFRINGING ACTIVITY

31.    Mixtiles compete with Tracer in the repositionable frame system market, more specifically in the field of magnetically coupled photo frame systems and services.

**RESPONSE TO NO. 31:**

Denied.

32.    Upon information and belief, Mixtiles market to customers in the United States and worldwide, for repositionable frames systems, photo books and related services.

**RESPONSE TO NO. 32:**

Mixtiles admits that it markets to customers in the United States and elsewhere for repositionable frames and photo books. Mixtiles lacks knowledge or information sufficient to form a belief as to plaintiff's use of the term "and related services" and, therefore, denies the remaining averments of this paragraph.

33.    Mixtiles currently make, use, sell or offer for sale, and import into the United States repositionable magnetic frame system products referred to as the "Mixtiles," "Stickable Photo Tiles," "Restickable Photo Tiles" or "Magnetic Hanging System," among others (collectively the "Accused Products"). Representative images of Mixtiles' repositionable magnetic frame system products are set forth below:



Mixtiles, Ltd., Restickable Photo Tiles, https://create.mixtiles.com/small-photo-tiles (last visited September 13, 2024).

 



Mixtiles, Ltd., Stunning Photo Walls Made Easy, https://www.mixtiles.com/ (last visited September 13, 2024).

### RESPONSE TO NO. 33:

The identified website and pictures speak for themselves. Mixtiles denies that the restickable photo tiles shown in the images of this averment are representative of Mixtiles' repositionable magnetic frame system products and that all of Mixtiles' repositionable magnetic

frame system products are the same.[1] The remaining averments of this paragraph are argument

and legal conclusions for which no response is required and, on that basis, Mixtiles denies them.

34.    The Accused Products infringe one or more claims of the Asserted Patent, including at least claims 1 and 17-19 of the '889 Patent.

**RESPONSE TO NO. 34:**

The averments of this paragraph are legal conclusions to which no response is required. To

the extent any further response to paragraph 34 is required, Mixtiles denies the averments.

35.    The Accused Products meet each and every limitation of at least claim 1 and 17-19 of the '889 Patent as shown in the chart comparing claim 1 to the Mixtiles products that appear in Mixtiles' Magnet hanging instructions video, https://youtu.be/N0LjYkLkNig (the "Mixtiles Video"), uploaded in the Help section of Mixtiles website, https://help.mixtiles.com/en/articles/4742191-how-to-hang-your-mixtiles, which is representative of the Accused Products, attached hereto as Exhibit H.

**RESPONSE TO NO. 35:**

The averments of this paragraph are legal conclusions to which no response is required. To

the extent any further response to paragraph 34 is required, Mixtiles denies the averments.

36.    At the timecodes 0:35, 0:36, and 0:40, of the Mixtiles Video, Mixtiles show the use of a wall as a "support surface" for purposes of the Accused Products. *See* Ex. H, at 2 of 6 ([1.1]).

**RESPONSE TO NO. 36:**

The content of the identified video speaks for itself. To the extent any further response to

paragraph 36 is required, Mixtiles denies the remaining averments and legal conclusions.

37.    At the timecodes 0:35, 0:36, and 0:40, of the Mixtiles Video, Mixtiles show the presence of a black square apparatus that constitutes the Accused Products' "wall mount." *See id.*

---

[1] Mixtiles does not know exactly which products are encompassed by the term "Accused Products" but, for purposes of this responsive pleading, limits the term to the Mixtiles' product that appears in Mixtiles' Magnet hanging instructions video, https://youtu.be/N0LjYkLkNig (the "Mixtiles Video"), as relied upon by Plaintiff in its infringement allegations below.

**RESPONSE TO NO. 37**:

The content of the identified video speaks for itself. To the extent any further response to

paragraph 37 is required, Mixtiles denies the remaining averments and legal conclusions.

38.     At the timecode 0:36 of the Mixtiles Video, Mixtiles show that the Accused Products' "wall mount" is "repositionable" and can be "repositionably secured" to a wall, i.e., a "support surface." *See id.*

**RESPONSE TO NO. 38**:

The content of the identified video speaks for itself. To the extent any further response to

paragraph 38 is required, Mixtiles denies the remaining averments and legal conclusions.

39.     At the timecode 0:07 of the Mixtiles Video, Mixtiles show, in the right hand of the individual demonstrating the Accused Products, that the Accused Products include a black square apparatus constituting "a first magnetic element." *See* Ex. H, at 3 of 6 ([1.2]).

**RESPONSE TO NO. 39**:

The content of the identified video speaks for itself. To the extent any further response to

paragraph 39 is required, Mixtiles denies the remaining averments and legal conclusions.

40.     At timecode 0:04 of the Mixtiles Video, Mixtiles show the Accused Products includes "a frame." *See* Ex. H, at 3 of 6 ([1.3]).

**RESPONSE TO NO. 40**:

The content of the identified video speaks for itself. To the extent any further response to

paragraph 40 is required, Mixtiles denies the remaining averments and legal conclusions.

41.     At timecodes 0:06 and 0:07 of the Mixtiles Video, Mixtiles show, in the left hand of the individual demonstrating the Accused Products, that the Accused Products include "a frame having a rear face that is magnetically attracted to the first magnetic element" referenced in Paragraph 36 above. *See id.*

**RESPONSE TO NO. 41**:

The content of the identified video speaks for itself. To the extent any further response to

paragraph 41 is required, Mixtiles denies the remaining averments and legal conclusions.

42.     At timecode 0:06 of the Mixtiles Video, Mixtiles show the Accused Products' "magnetic coupling between the frame and the repositionable wall mount." *See id.* Although the video does not show the frame actually mounted to the wall at this time, it is clear from other portions of the video that the object being secured magnetically to the frame is the repositionable wall mount shown secured to the wall at other times in the video.

**RESPONSE TO NO. 42:**

The content of the identified video speaks for itself. To the extent any further response to

paragraph 42 is required, Mixtiles denies the remaining averments and legal conclusions.

43.     At timecodes 0:04 and 0:07 of the Mixtiles Video, Mixtiles show, on the front of the "frame," the rectangular brown border that "defines an outer periphery of the frame" of the Accused Products. *See* Ex. H, at 4 of 6 ([1.4]).

**RESPONSE TO NO. 43:**

The content of the identified video speaks for itself. To the extent any further response to

paragraph 43 is required, Mixtiles denies the remaining averments and legal conclusions.

44.     At timecode 0:07 of the Mixtiles Video, Mixtiles show, in the left hand of the individual demonstrating the Accused Products, that the "rear face of the frame includ[es] a center section disposed internal to the border frame section." *See* Ex. H, at 4 of 6 ([1.5]). The video clearly shows a center section on the back of, and within the outer periphery of, the frame.

**RESPONSE TO NO. 44:**

The content of the identified video speaks for itself. To the extent any further response to

paragraph 44 is required, Mixtiles denies the remaining averments and legal conclusions.

45.     At timecode 0:07 of the Mixtiles Video, Mixtiles show, in the left hand of the individual demonstrating the Accused Products, that the foregoing "center section . . . protrudes outwardly from the center section." *See id.* The video clearly shows that the Accused Product has a "center section of the rear face of the frame" having a relatively lighter gray color that is "disposed internal to the border frame section" having a relatively darker gray color, which "border frame section protrudes outwardly from the center section." *See id..* Although only three of the four sides of the border frame section are shown in the Mixtiles Video at timecode 0:07, other portions of the Mixtiles Video disclose that the border frame section extends on four sides of the Accused Product. *See, e.g., id.* at timecode 0:06.

**RESPONSE TO NO. 45:**

The content of the identified video speaks for itself. To the extent any further response to

paragraph 45 is required, Mixtiles denies the remaining averments and legal conclusions.

46.    At timecode 0:07 of the Mixtiles Video, Mixtiles show, in the left hand of the
individual demonstrating the Accused Products, that the foregoing "second magnetic element," *i.e.*
the center section of the rear face of the frame, is indeed "located within the center section" of the
frame. *See* Ex. H, at 4 of 6 ([1.6]). The Mixtiles Video at timecode 0:07 also clearly shows that the
center section of the rear face of the frame having a relatively lighter gray is "offset and spaced
from the border frame section so as to define a border area that surrounds the second magnetic
element and extends from an outer peripheral edge of the second magnetic element to the border
frame section." *See* Ex. H, at 4–5 of 6 ([1.6]). Although only three of the four sides of the border
frame section are shown in the Mixtiles Video at timecode 0:07, other portions of the Mixtiles
Video disclose that the border frame section extends on four sides and surrounds the second
magnetic element. *See, e.g., id.* at timecode 0:06.

**RESPONSE TO NO. 46:**

The content of the identified video speaks for itself. To the extent any further response to

paragraph 46 is required, Mixtiles denies the remaining averments and legal conclusions.

47.    At page 5 of 6 of Exhibit H, Plaintiff includes an actual image of a cross section of
the Accused Products, showing that the repositionable wall mount of the Accused Products
includes, from right to left: "a repositionable adhesive"; "a layer of foam"; and "a magnetically
receptive rubber layer that is permanently bonded to the layer of foam." *See id.*, at 5. The image
shows that the repositionable adhesive is "coated over the layer of foam and configured for
contacting the support surface." The Mixtiles Video shows that the adhesive layer of the wall
mount is "configured for contacting the support surface and allowing repositioning of the
repositionable wall mount." *Id.*

**RESPONSE TO NO. 47:**

Mixtiles lacks knowledge or information sufficient to form a belief as to the truth of the

averments of this paragraph as to page 5 of 6 of Exhibit H to the FAC, and denies them on that

basis. The content of the referenced video speaks for itself. To the extent any further response to

paragraph 47 is required, Mixtiles denies the remaining averments and legal conclusions.

48.    Upon information and belief, Mixtiles, individually and collectively, have infringed
and continue to infringe the Asserted Patent by at least using, selling, and offering for sale the
Accused Products in the United States and importing the Accused Products into the United States.
Specifically, upon information and belief, Mixtiles market the Accused Products to customers in

the United States, by *inter alia*, selling or offering to sell the Accused Products to customers, through its online website https://www.mixtiles.com/ and providing support services for the Accused Products to customers.

**RESPONSE TO NO. 48:**

    Denied.

    49.    In the alternative, Mixtiles, Ltd. has induced and is continuing to induce infringement of the Asserted Patent by actively and knowingly inducing Mixtiles USA to make, use, sell, offer for sale, or import the Accused Products that infringe one or more claims of the Asserted Patent. Upon information and belief, Mixtiles, Ltd. has designed, manufactured, marketed and provided to Mixtiles USA the Accused Products that Mixtiles USA sold to customers in the United States; has provided and presently intend to provide Mixtiles USA's customers with customer support services including instructions for using the Accused Products and refund services, which facilitates Mixtiles USA's sales; and, as of at least November 21, 2024, when Mixtiles received Tracer's letter informing Mixtiles of infringement of the '889 Patent, such acts are performed by Mixtiles, Ltd. with knowledge that the sale of the Accused Products by Mixtiles USA infringes the Asserted Patent and with the specific intent that Mixtiles USA engage in such infringing    activity.

**RESPONSE TO NO. 49:**

    Denied.

    50.    Upon information and belief, Mixtiles sold the Accused Product to at least one customer located in this District.

**RESPONSE TO NO. 50:**

    Mixtiles objects to the overbroad definition of "Accused Products," and on that basis denies the averments of this paragraph.

    51.    In that the Accused Products meet the limitations of one or more claims of the Asserted Patent either literally or under the doctrine of equivalents, including at least claim 1 of the '889 Patent, the use of the Accused Product by Mixtiles' customers to hang photo frames on the wall constitutes an infringing use of a product covered by the Asserted Patent.

**RESPONSE TO NO. 51:**

    The averments of this paragraph are argument and legal conclusions to which no response is required. To the extent any further response to this paragraph is required, Mixtiles denies the remaining averments and legal conclusions

52.    In connection with the sale of the Accused Products to customers, Mixtiles provide customers with detailed instruction for installing the Accused Products on the wall and using the Accused Products. For example, the "How to Hang Your Mixtiles" guide on the Mixtiles website attached as Exhibit I provides customers with instructions for installation and use of the Accused Products. https://help.mixtiles.com/en/articles/4742191-how-to-hang-your-mixtiles.

**RESPONSE TO NO. 52**:

The content of the identified website speaks for itself. Mixtiles admits that a copy of the

terms of service was attached as Exhibit B to the FAC. To the extent any further response to

paragraph 52 is required, Mixtiles denies the remaining averments.

53.    On information and belief, Mixtiles have induced and are continuing to induce infringement of the Asserted Patent by actively and knowingly inducing others to use, sell, offer for sale, or import the Accused Products that infringe one or more claims of the Asserted Patent. Specifically, Mixtiles have: sold, continued to sell, and presently intend to sell, the Accused Products to customers in the United States; have provided, continued to provide, and presently intend to provide those customers with detailed instructions for using the Accused Products; and, as of at least November 21, 2024, when Mixtiles received Tracer's letter informing Mixtiles of infringement of the '889 Patent, such acts are performed by Mixtiles with knowledge that the use of the Accused Products by Mixtiles' customers infringes the Asserted Patent and with the specific intent that Mixtiles' customers engage in such infringing activity.

**RESPONSE TO NO. 53**:

The averments of this paragraph are argument and legal conclusions to which no response

is required. To the extent any further response to this paragraph is required, Mixtiles denies the

remaining averments and legal conclusions

### MIXTILES' PRE-SUIT KNOWLEDGE OF TRACER'S PATENTS AND CHARGE OF INFRINGEMENT

54.    Before filing this action, on November 21, 2024, Tracer sent the letter attached as Exhibit J to Mixtiles notifying about Tracer's patents and Mixtiles' infringement thereof and requesting Mixtiles to cease and desist the infringing activities. Among other things, Tracer identified one of its patents, U.S. Patent No. 12,108,889, and an exemplary infringing product of Mixtiles, and provided a claim chart demonstrating how the patent is infringed by the Mixtiles product. That same claim chart is attached as part of Exhibit J (D.I. 1-10) and also is attached as Exhibit H to the Complaint (D.I. 1-8). Although Tracer on this letter gave Mixtiles two weeks to respond, which made Mixtiles' response due December 5, 2024, Mixtiles responded on December 4, 2024 requesting an extension of time to respond. In the spirit of good faith, Tracer agreed to extend the time for Mixtiles' response until December 16, 2024. Mixtiles did not responded to Tracer's letter until December 17, 2024, and its response was inadequate, particularly because

Mixtiles continue to infringe by offering for sale and selling the Accused Product in the United States including this District.

**RESPONSE TO NO. 54:**

To the extent this paragraph calls for legal conclusions, no response is required. Mixtiles admits that Tracer sent a letter on November 21, 2024. Mixtiles admits that the letter identified the '889 Patent and accused a Mixtiles product of infringing it. Mixtiles admits that the letter requested a response on December 5, 2024. Mixtiles admits that it requested an extension of time to respond. Mixtiles admits that it responded on December 17, 2024. Except as specifically admitted and to the extent that a response is required, Mixtiles denies any remaining allegation in this paragraph.

## COUNT ONE

## (Infringement of the '889 Patent, 35 U.S.C. § 271)

55.    Plaintiff Tracer repeats and alleges as if fully set forth herein the allegations contained in all the preceding paragraphs ¶¶ 1-54.

**RESPONSE TO NO. 55:**

Mixtiles restates and reaffirms its answers and denials to the preceding allegations as stated above.

56.    The '889 Patent is valid and enforceable.

**RESPONSE TO NO. 56:**

The averments of this paragraph are argument and legal conclusions to which no response is required. To the extent any further response to this paragraph is required, Mixtiles denies the remaining averments and legal conclusions.

57.    The Accused Product meets the limitations of one or more claims of the '889 Patent either literally or under the doctrine of equivalents, including at least claims 1 and 17-19.

**RESPONSE TO NO. 57:**

The averments of this paragraph are argument and legal conclusions to which no response is required. To the extent any further response to this paragraph is required, Mixtiles denies the remaining averments and legal conclusions.

58.     Mixtiles, either individually or collectively, have directly infringed and continue to directly infringe one or more claims of the '889 Patent in violation of 35 U.S.C. § 271(a) by manufacturing, using, providing, selling, offering to sell, importing and/or distributing without authority the Accused Products in the United States and in this District.

**RESPONSE TO NO. 58:**

The averments of this paragraph are argument and legal conclusions to which no response is required. To the extent any further response to this paragraph is required, Mixtiles denies the remaining averments and legal conclusions.

59.     In the alternative, Mixtiles, Ltd. indirectly infringes and continues to indirectly infringe one or more claims of the '899 Patent, including at least claims of 1 and 17-19 in violation of 35 U.S.C. § 271(b), by knowingly inducing Mixtiles USA to sell, offer to sell, and/or import the Accused Product that embodies the '889 Patent with the specific intent that Mixtiles USA engage in such infringing activity.

**RESPONSE TO NO. 59:**

The averments of this paragraph are argument and legal conclusions to which no response is required. To the extent any further response to this paragraph is required, Mixtiles denies the remaining averments and legal conclusions.

60.     Mixtiles, either individually or collectively, indirectly infringe and continue to indirectly infringe one or more claims of the '889 Patent, including at least claims 1 and 17-19 in violation of 35 U.S.C. § 271(b), by knowingly inducing one or more of Mixtiles' customers to purchase, install and/or use the Accused Product that embodies the '889 Patent with the specific intent that Mixtiles' customers engage in such infringing activity.

**RESPONSE TO NO. 60**:

The averments of this paragraph are argument and legal conclusions to which no response is required. To the extent any further response to this paragraph is required, Mixtiles denies the remaining averments and legal conclusions.

61.    As outlined above, under the totality of the circumstances, Mixtiles' infringement of the '889 Patent is willful from at least the date that Mixtiles first learned of the '889 Patent.

**RESPONSE TO NO. 61**:

The averments of this paragraph are argument and legal conclusions to which no response is required. To the extent any further response to this paragraph is required, Mixtiles denies the remaining averments and legal conclusions.

62.    In any event, Mixtiles had knowledge of the '889 Patent, Mixtiles' infringement of the '889 Patent, and the infringement of the '889 Patent by Mixtiles' customers, at the latest as of the filing date of this complaint.

**RESPONSE TO NO. 62**:

The averments of this paragraph are argument and legal conclusions to which no response is required. To the extent any further response to this paragraph is required, Mixtiles denies the remaining averments and legal conclusions.

63.    On information and belief, Mixtiles have gained profits and market share by virtue of its infringement of the '889 Patent.

**RESPONSE TO NO. 63**:

Denied.

64.    Tracer has sustained damages as a direct and proximate result of Mixtiles' infringement of the '889 Patent.

**RESPONSE TO NO. 64**:

Denied.

65.    Tracer is entitled to recover at least a reasonable royalty, and its lost profits, enhanced damages, costs and expenses and attorney fees, and all other relief allowed under the Patent Act.

**RESPONSE TO NO. 65:**

The averments of this paragraph are argument and legal conclusions to which no response is required. To the extent any further response to this paragraph is required, Mixtiles denies the remaining averments and legal conclusions.

66.    Tracer will suffer and is suffering irreparable harm from Mixtiles' infringement of the '889 Patent. Tracer has no adequate remedy at law and is entitled to an injunction against Mixtiles' continuing infringement of the '889 Patent. Unless enjoined, preliminary and permanently, Mixtiles will continue its infringing conduct.

**RESPONSE TO NO. 66:**

The averments of this paragraph are argument and legal conclusions to which no response is required. To the extent any further response to this paragraph is required, Mixtiles denies the remaining averments and legal conclusions.

## PRAYER FOR RELIEF

Mixtiles, Ltd. and Mixtiles USA, Inc. deny that Tracer is entitled to any of the relief it prays for, or any relief at all, for the allegations contained in its First Amended Complaint.

## AFFIRMATIVE DEFENSES

Mixtiles, Ltd. and Mixtiles USA, Inc. allege and assert the following affirmative defenses in response to the allegations in Tracer's FAC. Mixtiles, Ltd. and Mixtiles USA, Inc. reserve the right to amend their answer to Tracer's First Amended Complaint, or assert additional defenses and claims, at law or equity, which may exist now or in the future, as additional information becomes available and/or is discovered.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

Tracer's First Amended Complaint and the claim for relief set forth therein fail to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Noninfringement)

Mixtiles does not infringe and has not infringed any valid claims of the '889 Patent, literally or under the doctrine of equivalents.

## THIRD AFFIRMATIVE DEFENSE
### (Invalidity)

On information and belief, one or more claims of the '889 Patent are invalid because they do not meet the conditions of patentability and/or comply with the requirements of 35 U.S.C. §§ 101, *et. seq.*, including but not limited to §§ 102, 103, 112, or judicially created doctrines of invalidity, including but not limited to improper inventorship and the Rules and Regulations of the U.S. Patent and Trademark Office.

## FOURTH AFFIRMATIVE DEFENSE
### (Patent Marking and Limitations on Damages)

Plaintiff's claims for damages and recovery of costs are limited by 35 U.S.C. §§ 287 and/or 288.

## FIFTH AFFIRMATIVE DEFENSE
### (Prosecution History Estoppel)

Plaintiff's claims are barred, in whole or in part, under the doctrine of prosecution history estoppel.

## SIXTH AFFIRMATIVE DEFENSE
### (No Equitable Relief)

Plaintiff is not entitled to equitable relief, including but not limited to any request for injunctive relief, as it has an adequate remedy at law, and cannot show any irreparable harm.

## SEVENTH AFFIRMATIVE DEFENSE
### (Exceptionality)

Plaintiff is not entitled to enhanced or increased damages, or attorneys' fees, on the basis that this case is exceptional. Mixtiles reserves the right to move for attorneys' fees on the basis that this case is exceptionally frivolous or otherwise exceptional in a manner that warrants an award of attorneys' fees to Mixtiles under 35 U.S.C. § 285.

## EIGHTH AFFIRMATIVE DEFENSE
### (No Willful Infringement)

The FAC fails to state a claim for relief against Mixtiles for enhanced or increased damages for willful infringement.

## Reservation of Additional Defenses

Mixtiles reserves the right to assert and rely on any additional defenses that may become available or apparent, and to amend its Answer and/or defenses and claims accordingly.

**COUNTERCLAIMS**

Mixtiles Ltd. and Mixtiles USA, Inc. (collectively, "Mixtiles") hereby asserts the following counterclaims against Plaintiff Tracer Imaging LLC ("Plaintiff") as follows:

**PARTIES**

67.    Mixtiles Ltd. is a private limited company organized under the laws of Israel, with its principal place of business located at 54/3 Ahad Haam, Tel Aviv-Jaffa, 6520216, Israel.

68.    Mixtiles USA, Inc. is a Delaware corporation, with its principal place of business at 1313 N Market St Ste 5100 Wilmington, Delaware, 19801.

69.    Upon information and belief, Tracer Imaging, LLC is a Delaware limited liability company having a principal place of business at 712 Kitchawan Road, Ossining, New York, 10562, United States.

**JURISDICTION AND VENUE**

70.    This is a civil action for a declaration of non-infringement and invalidity of U.S. Patent No. 12,108,889 (the "'889 Patent") arising under the Declaratory Judgment Act, 28 U.S.C.§ 2201, *et. seq.*, and the patent laws of the United States, 35 U.S.C. § 1, *et seq.*

71.    The Court has subject matter jurisdiction over these counterclaims pursuant to the Declaratory Judgement Act, 28 U.S.C. §§ 2201-2202 and U.S.C. §§ 1331 and 1338(a).

72.    The Court has personal jurisdiction over Plaintiff because Plaintiff has submitted to the jurisdiction of this Court through the filing of its Complaint and First Amended Complaint against Mixtiles.

73.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and because Plaintiff filed its Complaint and First Amended Complaint in this District.

## BACKGROUND

74.    On November 21, 2024, Plaintiff sent a letter to Mixtiles alleging infringement of the '889 Patent.

75.    On December 17, 2024, Mixtiles responded to Plaintiff's letter disputing Plaintiff's allegation of infringement and identifying separate reasons why all of claims 1-21 are invalid in view prior art and/or unenforceable.

76.    To this day, Plaintiff has never provided a substantive response to Mixtiles' positions of non-infringement and that the claims of the '889 Patent are invalid and/or unenforceable.

77.    Rather, on December 17, 2024, that same day that Mixtiles responded to Plaintiff's letter alleging infringement, Plaintiff filed its Complaint against Mixtiles, alleging that certain Mixtiles' Restickable Photo Tiles with a frame and center magnet infringe the '889 Patent.

78.    On April 9, 2025, Plaintiff filed its First Amended Complaint (FAC) against Mixtiles, also alleging that certain Mixtiles' Restickable Photo Tiles with a frame and center magnet infringe the '889 Patent.

## EXEMPLARY PRIOR ART TO THE '889 PATENT

79.    The '889 Patent is entitled "Magnetic Framing System" and was filed as U.S. Patent Application Serial No. 18/133,801 (the "'801 Application") on April 12, 2023. It discloses a repositionable frame system wherein a frame is magnetically coupled to a wall mount.

80.    The '801 Application was a continuation of U.S. Application No. 17/140,254, filed on January 4, 2021, now U.S. Patent No. 11,641,957, and claimed priority to U.S. Provisional Patent Application No. 62/957,589, filed on January 6, 2020 and U.S. Provisional Patent Application No. 62/957,195, filed on January 4, 2020.

81.    U.S. Patent No. 6,052,933, entitled "Picture Framing System," issued on April 25, 2000. It discloses a repositionable frame system wherein a frame is magnetically coupled to a wall mount.

82.    U.S. Patent No. 8,397,411, entitled "Magnet-Based Mounting Systems for Frames," issued on March 19, 2013. It discloses a repositionable frame system wherein a frame is magnetically coupled to a wall mount.

83.    U.S. Patent No. 9,920,783, entitled "Article Support Using Peel Release Adhesives," issued on March 20, 2018. It discloses a repositionable mounting article wherein the mounting article frame is adhesively coupled to a wall mount.

84.    U.S. Published Patent Application No. 2018/0368589, entitled "Magnetic Picture Frame System, Kit, and Method for Hanging a Magnetic Picture Frame," published on December 27, 2018. It discloses a frame system wherein a frame is magnetically coupled to a fixing apparatus.

85.    On information and belief, in or about the Summer of 2018, named co-inventor of the '889 Patent, Charles Phillips, conceived, developed, engineered, researched, and reduced to practice a solution for removably hanging photos, graphic images, or sheets of art within a decorative frame onto a vertical wall, with the frame being incrementally adjustable by sliding in both the vertical and the horizontal directions, while maintaining contact with the wall, with the

frame to be magnetically secured onto the wall by a consumer by the use of planar magnetic attracting element and adhesives securing the same to the frame and a magnetic attracting element to the frame-secured element, removably secured to the wall via a foam layer and an adhesive (the "Phillips Technology"). *See, e.g.,* Exhibit 1, Charles Phillips v. Tracer Imaging NY State Complaint at ¶ 37.

86.    On information and belief, by about November 4, 2018, named co-inventor of the '889 Patent, Charles Phillips, had reduced his concepts and the Phillips Technology to practice, created and formed a prototype, and presented his concept and idea comprising the Phillips Technology, that he also referred to as the Stick-It-Frame, to DNP ("Dai Nippon Printing") Photo Imaging. *See, e.g.,* Exhibit 1, at ¶ 38.

87.    On information and belief, the Phillips Technology, that predated the January 6, 2020 provisional application identified on the face of the '889 Patent, is depicted in the following drawings:





(Exhibit 1 at 71)

**COUNT I**
**(Declaratory Judgment of Noninfringement of the '889 Patent)**

88.    Mixtiles incorporates by reference as if fully set forth herein the allegations of the preceding paragraphs 67 - 87.

89.    Mixtiles has not infringed and does not infringe, either literally or under the doctrine of equivalents, any claim of the '889 Patent, and has not infringed and does not infringe, either literally or under the doctrine of equivalents, any valid, enforceable, and/or asserted claim of the '889 Patent.

90.    Mixtiles has not infringed and does not infringe, either contributorily, by inducement, or in any other manner, any claim of the '889 Patent, and has not infringed and does not infringe either contributorily, by inducement, or in any other manner, any valid, enforceable, and/or asserted claim of the '889 Patent.

91.    An actual and justiciable controversy exists between Mixtiles and Tracer Imaging regarding Tracer Imaging's allegations that Mixtiles infringes the '889 Patent.

92.    A judicial declaration of noninfringement of the '889 Patent is necessary and appropriate to resolve this controversy.

**COUNT II**
**(Declaratory Judgment of Invalidity of the '889 Patent)**

93.    Mixtiles incorporates by reference as if fully set forth herein the allegations of the preceding paragraphs 67 - 92.

94.    Each and every claim of the '889 Patent is invalid for failure to comply with the requirements of patentability set forth in at least 35 U.S.C. §§ 102, 103, and/or 112.

95.    Each and every claim of the '889 Patent is invalid, unenforceable and in violation of 35 U.S.C. §102 and/or 103 as being anticipated by and/or rendered obvious in view of prior art.

96.    Upon preliminary examination, and by way of example and not as a limitation, such prior art that renders at least asserted claims 1 and 17-19 invalid includes but is not limited to at least the following references: the Phillips Technology, U.S. Patent No. 6,052,933; U.S. Patent No. 9,920,783; U.S. Patent No. 8,397,411; and U.S. Published Patent Application No. 2018/0368589.

## '889 PATENT, CLAIM 1

97.    On information and belief, on or about November 4, 2018, named co-inventor of the '889 Patent, Charles Phillips offered for sale or otherwise made available to the public the Phillips Technology when he presented it to DNP, and the disclosure of the Phillips Technology included all of the elements of Claim 1 of the '889 Patent.

98.    The preamble of Claim 1 of the '889 Patent recites "a repositionable frame system comprising:" which is disclosed at least by the Phillips Technology disclosed to DNP by about November 4, 2018.

99.    Claim 1 of the '889 Patent recites "a repositionable wall mount configured for being repositionably secured to a support surface" which is disclosed at least by the Phillips Technology disclosed to DNP by about November 4, 2018.



(Exhibit 1 at 71)

100.    Claim 1 of the '889 Patent further recites "the repositionable wall mount including a first magnetic element; and," which is disclosed at least by the Phillips Technology that was disclosed to DNP by about November 4, 2018 that included magnetic receptive rubber mounted to the wall board/sheetrock.



(Exhibit 1 at 71)

101.    Claim 1 of the '889 Patent further recites "a frame having a rear face that includes a second magnetic element that is magnetically attracted to the first magnetic element resulting in a magnetic coupling between the frame and the repositionable wall mount," which is disclosed at

least the Phillips Technology that was disclosed to DNP by about November 4, 2018 and that includes magnetic rubber on the back of the frame that is attracted to the magnetic receptive rubber mounted to the wall board/sheetrock.



(Exhibit 1 at 71)

102.    Claim 1 of the '889 Patent further recites "wherein the frame has a border frame section that defines an outer periphery of the frame, the rear face of the frame including a center section disposed internal to the border frame section which protrudes outwardly from the center section," which is disclosed at least by the Phillips Technology that was disclosed to DNP by about November 4, 2018 and which includes a border frame section that defines an outer periphery of the frame, the rear face of the frame including a center section disposed internal to the border frame section which protrudes outwardly from the center section.



(Exhibit 1 at 71 (annotated))

103.    Claim 1 of the '889 Patent further recites "the second magnetic element being located within the center section and being offset and spaced from the border frame section so as to define a border area that surrounds the second magnetic element and extends from an outer peripheral edge of the second magnetic element to the border frame section," which is disclosed at least by the Phillips Technology that was disclosed to DNP by about November 4, 2018 and which shows the magnetic rubber is located with the center section and being offset and spaced from the border frame section so as to define a border area that surrounds the second magnetic element and extends from an outer peripheral edge of the second magnetic element to the border frame section.



(Exhibit 1 at 71 (annotated))

104.    Claim 1 of the '889 Patent further recites "wherein the repositionable wall mount includes a layer of foam" is disclosed at least by the Phillips Technology that was disclosed to DNP by November 4, 2018.



(Exhibit 1 at 71)

- 34 -

105. Claim 1 of the '889 Patent further recites "a repositionable adhesive coated over the layer of foam and configured for contacting the support surface and allowing repositioning of the repositionable wall mount; and a magnetically receptive rubber layer that is permanently bonded to the layer of foam," which is disclosed at least by the Phillips Technology that was disclosed to DNP by about November 4, 2018.



(Exhibit 1 at 71)

106. The combination of U.S. Patent No. 6,052,933 (the "'933 Patent") and U.S. Patent No. 9,920,783 (the "'783 Patent") is but one example of a prior art combination that discloses all of the elements of Claim 1 of the '889 Patent.

107. The preamble of Claim 1 of the '889 Patent recites "a repositionable frame system comprising:" which is disclosed at least by the '933 Patent's disclosure of "[a] picture framing system is disclosed for mounting, displaying and protecting a photograph or work of art on a vertical surface of ferrous metal, non-ferrous metal, or a non-metallic surface without using nails" (Abstract).

108.    Claim 1 of the '889 Patent recites "a repositionable wall mount configured for being repositionably secured to a support surface" which is disclosed at least by the '933 Patent's disclosure as shown in Figures 4 and 5, "[i]f the individual desires to attach the photo holder 14, containing the photograph 12 and any mat or mats, and the frame 50, to a non-metal surface, such as wood, plastic or glass, all that is needed is to peel away the protective siliconized paper from the rear surface 46 of the sheet 42 so that the sheet 42 can be adhered by the self-adhesive rear surface 46 to any clean dry surface." (Col. 6, ll. 13-20). "The self adhesive surface 46 permits removable attachment of the sheet 42 to both non-ferrous metal and non-metal surfaces." (Col. 4, ll. 52-54).

109.    Claim 1 of the '889 Patent further recites "the repositionable wall mount including a first magnetic element; and," which is disclosed at least by the '933 Patent's disclosure "[t]he photo holder can then be mounted to the magnetically-attractive surface 44 of the sheet 42" (col. 6, ll. 21-23) and "a flat, parallelogram-shaped ferromagnetic sheet 42 . . . which has a front magnetically-attractive surface 44 and an opposite rear self-adhesive surface 46." (Col. 4, ll. 49-52).   "The self adhesive surface 46 permits removable attachment of the sheet 42 to both non-ferrous metal and non-metal surfaces." (Col. 4, ll. 52-54).



('933 Patent, Fig. 5 (annotated))

110.    Claim 1 of the '889 Patent further recites "a frame having a rear face that includes a second magnetic element that is magnetically attracted to the first magnetic element resulting in a magnetic coupling between the frame and the repositionable wall mount," which is disclosed at least by the '933 Patent's disclosure "[t]he photo holder 14 can then be mounted to the magnetically attractive surface 44 of sheet 42 by gently pressing magnetized rear surface 38 of sheet 34 there against. The frame 50 can then be secured to surface 44 of sheet 42 by gently pressing the strips 60 against surface 44 so that the frame 50 surrounds the photo holder 14 and gives a traditional framed appearance to the photograph 12 or work of art." (Col. 6, ll. 18-26) .



('933 Patent, Fig. 5 (annotated))

111.    Claim 1 of the '889 Patent further recites "wherein the frame has a border frame section that defines an outer periphery of the frame, the rear face of the frame including a center section disposed internal to the border frame section which protrudes outwardly from the center section," which is disclosed at least by the '933 Patent's disclosure of a frame 50 that defines an opening, or aperture 56 and that a photo holder 14 is placed and held within the frame 50. (col. 5, ll. 27-47). Figures 4 and 5 further disclose that the photo holder defines a center section disposed internal to the border frame section. The border frame section protrudes outwardly from the center section.

112.    Claim 1 of the '889 Patent further recites "the second magnetic element being located within the center section and being offset and spaced from the border frame section so as to define a border area that surrounds the second magnetic element and extends from an outer peripheral edge of the second magnetic element to the border frame section," which is disclosed at least by the '933 Patent's disclosure of the "magnetic sheet 34 . . . is cut and sized so that it . . . is slightly smaller then, the photo holder 14." (Col. 6, ll. 12-14).



('933 Patent, Fig. 5 (annotated))

113.    Claim 1 of the '889 Patent further recites "wherein the repositionable wall mount includes a layer of foam" is disclosed at least by the '783 Patent's disclosure that "the flexible backing layer 122 can include a flexible polymeric foam layer" (col. 4, ll. 65-66) and "[i]n some embodiments, the flexible backing layer 122 of the flexible adhesive tape structure 12 can be a composite foam that includes a flexible polymeric foam layer" (col. 5, ll. 22-40).

114.    Claim 1 of the '889 Patent further recites "a repositionable adhesive coated over the layer of foam and configured for contacting the support surface and allowing repositioning of

the repositionable wall mount; and a magnetically receptive rubber layer that is permanently bonded to the layer of foam," which is disclosed at least by the '933 Patent's disclosure "[t]he self adhesive surface 46 permits removable attachment of the sheet 42 to both non-ferrous metal and non-metal surfaces (col. 4, ll. 54-56) and "[t]he magnetic sheet 34 is a thin sheet of rubber with fine ferrous metal powder embedded within the sheet 34" which may then be "magnetized by passing the sheet 34 in close proximity to an electric field." (Col. 4, ll. 29-45). The '783 Patent discloses connecting member 162 bonded to flexible backing layer 122.  (Col. 8, ll. 4-12).

115.    As another example, the combination of U.S. Published Patent Application No. 2018/0368589 (the "'589 Application"), the '783 Patent, and the '933 Patent discloses all of the elements of Claim 1 of the '889 Patent.

116.    The preamble of Claim 1 of the '889 Patent recites "a repositionable frame system comprising:" which is disclosed at least by the '589 Application's disclosure of "a magnetic picture frame system to be hung to a supporting structure" and "[t]he system further comprises a fixing apparatus having a magnetic portion magnetically removably couplable to the ferromagnetic area of the outer face of the backing plate; and a coupling portion couplable with the supporting structure." (Abstract).

117.    Claim 1 of the '889 Patent recites "a repositionable wall mount configured for being repositionably secured to a support surface" which is disclosed at least by the '589 Application's disclosure "[c]oupling of the coupling mechanism to the supporting structure may be provided by magnetism [or] adhesive . . . ." (Para. [0145]). "In some example embodiments, the coupling portion 94 can engage the supporting structure without forming an interlocking engagement therewith." "Such interlocking engagements typically include a suitable fastener (nail, picture

hanger, screw) being fastened to the supporting structure and a slot configured to receive the fastener (ex: hanger hook, nail head or screw head) to form the interlocking engagement." (Para. [0145]). And the '783 Patent discloses that "[t]he flexible backing layer 122 has sufficient flexibility so that a user can easily remove the flexible adhesive tape structure 12 from a mounting surface by peeling . . . .) (Col. 4, ll. 56-58).



FIG. 8

('589 Application, Fig. 8)

118.    Claim 1 of the '889 Patent further recites "the repositionable wall mount including a first magnetic element; and," which is disclosed at least by the '589 Application's disclosure "[t]he fixing apparatus 82 has a magnetic portion 92 magnetically removably couplable to the outer face 96 of the backing plate 62 and a coupling portion 94 couplable with a supporting structure external to magnetic picture frame system 10." (Para. [0143]). "For example, the supporting structure can be the vertical surface of a wall. . . ." (Para. [0144]).



('589 Application, Fig. 8 (annotated))

119.    Claim 1 of the '889 Patent further recites "a frame having a rear face that includes a second magnetic element that is magnetically attracted to the first magnetic element resulting in a magnetic coupling between the frame and the repositionable wall mount," which is disclosed at least by the '589 Application's disclosure "[i]n the embodiment represented in FIGS. 12 and 13, the ferromagnetic area 65 and the backing plate 62 are made of distinct elements. In the embodiment shown, the magnetic picture frame system 10 further comprises a ferromagnetic plate having an inner face configured to be secured by any adapted means to the outer face 96 of the backing plate 62, and an opposed outer face that is configured to cooperate with the fixing apparatus 82. The dimensions of the ferromagnetic plate are substantially equal to or smaller than the dimensions of the outer face 96 of the backing plate 62." (Para. [0142]).



('589 Application, Fig. 12 (annotated))



('589 Application, Fig. 13 (annotated))

120. Claim 1 of the '889 Patent further recites "wherein the frame has a border frame section that defines an outer periphery of the frame, the rear face of the frame including a center section disposed internal to the border frame section which protrudes outwardly from the center section," which is disclosed at least by the '589 Application's disclosure in Figure 12, which shows backing plate 62 having a center section disposed internal to the border frame section that protrudes outwardly from the center section.



('589 Application, Fig. 13 (annotated))

121. Claim 1 of the '889 Patent further recites "the second magnetic element being located within the center section and being offset and spaced from the border frame section so as to define a border area that surrounds the second magnetic element and extends from an outer

peripheral edge of the second magnetic element to the border frame section," which is disclosed at least by the '589 Application's disclosure in Figure 12.



('589 Application, Fig. 12 (annotated))

122.    Claim 1 of the '889 Patent further recites "wherein the repositionable wall mount includes a layer of foam" is disclosed at least by the '589 Application's disclosure that "[c]oupling of the coupling mechanism to the supporting structure may be provided by . . . adhesive" and the '783 Patent's disclosure that "the flexible backing layer 122 can include a flexible polymeric foam layer" (col. 4, ll. 65-66) and "[i]n some embodiments, the flexible backing layer 122 of the flexible adhesive tape structure 12 can be a composite foam that includes a flexible polymeric foam layer." (Col. 5, ll. 22-40).

123.    Claim 1 of the '889 Patent further recites "a repositionable adhesive coated over the layer of foam and configured for contacting the support surface and allowing repositioning of

the repositionable wall mount; and a magnetically receptive rubber layer that is permanently bonded to the layer of foam," which is disclosed at least by the '933 Patent's disclosure "[t]he self adhesive surface 46 permits removable attachment of the sheet 42 to both non-ferrous metal and non-metal surfaces (col. 4, ll. 53-55) and "[t]he magnetic sheet 34 is a thin sheet of rubber with fine ferrous metal powder embedded within the sheet 34" which may them be "magnetized by passing the sheet 34 in close proximity to an electric field." (Col. 4, ll. 29-45). The '783 Patent discloses connecting member 162 bonded to flexible backing layer 122.  (Col. 8, ll. 4-12).

## '889 PATENT, CLAIM 17

124.    On information and belief, on or about November 4, 2018, named co-inventor of the '889 Patent, Charles Phillips offered for sale or otherwise made available to the public the Phillips Technology when he presented it to DNP, and the disclosure of the Phillips Technology included all of the elements of Claim 17 of the '889 Patent.

125.    Claim 17 of the '889 Patent recites "[t]he frame system of claim 1, wherein the border area completely surrounds the second magnetic element," which is disclosed at least by the Phillips Technology disclosed to DNP by about November 4, 2018.



(Exhibit 1 at 71 (annotated))

126.     The combination of the '933 Patent and the '783 Patent is but one example of a prior art combination that discloses all of the elements of Claim 17 of the '889 Patent.

127.     Claim 17 of the '889 Patent recites "[t]he frame system of claim 1, wherein the border area completely surrounds the second magnetic element," which is disclosed at least by the '933 Patent's disclosure "magnetic sheet 34 . . . is cut and sized so that it . . . is slightly smaller then, the photo holder 14." (col. 6, ll. 12-14). As such, an empty space is created that completely surrounds the magnetic sheet 42.



('933 Patent, Fig. 5 (annotated))

128.    As another example, the '589 Application, the '783 Patent, and the '933 Patent disclose all of the elements of Claim 17 of the '889 Patent.

129.    Claim 17 of the '889 Patent recites "[t]he frame system of claim 1, wherein the border area completely surrounds the second magnetic element," which is disclosed at least by the '589 Application's disclosure in Figure 12 showing a border area completely surrounding the second magnetic element.



FIG. 12

('589 Application, Fig. 12 (annotated))

## **'889 PATENT, CLAIM 18**

130.    On information and belief, on or about November 4, 2018, named co-inventor of the '889 Patent, Charles Phillips offered for sale or otherwise made available to the public the Phillips Technology when he presented it to DNP, and the disclosure of the Phillips Technology included all of the elements of Claim 18 of the '889 Patent.

131.    Claim 18 of the '889 Patent recites "[t]he frame system of claim 1, wherein an area of the border area is greater than an area of the second magnetic element" is disclosed at least by the Phillips Technology disclosed to DNP by about November 4, 2018.



(Exhibit 1 at 71 (annotated))

132.    The combination of the '933 Patent, the '783 Patent, and U.S. Patent No. 8,397,411 (the "'411 Patent") is but one example of a prior art combination that discloses all of the elements of Claim 18 of the '889 Patent.

133.    Claim 18 of the '889 Patent recites "[t]he frame system of claim 1, wherein an area of the border area is greater than an area of the second magnetic element" is disclosed at least by the '411 Patent's disclosure as shown in Figure 5 that a magnetic plate 24 is surrounded by a central area defined between the magnetic plate 24 and the sides of the frame members 51 and 52.



FIG. 5

('411 Patent, Fig. 5 (annotated))

134.    As another example, the combination of the '589 Application, the '783 Patent, and the '933 Patent discloses all of the elements of Claim 18 of the '889 Patent.

135.    Claim 18 of the '889 Patent recites "[t]he frame system of claim 1, wherein an area of the border area is greater than an area of the second magnetic element" which is disclosed at least by the '589 Application's disclosure in Figure 12.



FIG. 12

('589 Application, Fig. 12 (annotated))

### **'889 PATENT, CLAIM 19**

136.    On information and belief, on or about November 4, 2018, named co-inventor of the '889 Patent, Charles Phillips offered for sale or otherwise made available to the public the Phillips Technology when he presented it to DNP, and the disclosure of the Phillips Technology included all of the elements of Claim 19 of the '889 Patent.

137.    Claim 19 of the '889 Patent recites "[t]he frame system of claim 1, further including an image that seats against the border frame section and is disposed between a front face of the border frame section and a rear face of the border frame section," is disclosed at least by the Phillips Technology disclosed to DNP by about November 4, 2018.



(Exhibit 1 at 71)

138.    The combination of the '933 Patent, '783 Patent, and the '411 Patent is but one example of a prior art combination that discloses all of the elements of Claim 19 of the '889 Patent.

139.    Claim 19 of the '889 Patent recites "[t]he frame system of claim 1, further including an image that seats against the border frame section and is disposed between a front face of the border frame section and a rear face of the border frame section," which is disclosed at least by the '933 Patent's disclosure in Figures 1 and 5 that a photograph 12, or work of art, is inserted between sheets 16, 22 of the photo holder 14, such that the peripheral edges of the sheets 16, 22 are contained and held within the channel 58 of the frame 50 and between front and rear faces to the frame 50; and by the '411 Patent's disclosure of Figure 5 showing that artwork 30 is mounted in the frame 50 between front and rear faces of the frame.



('933 Patent, Fig. 1)



('933 Patent, Fig. 5)



('411 Patent, Fig. 5 (annotated))

140.    As another example, the combination of the '589 Application, the '783 Patent, and the '933 Patent discloses all of the elements of Claim 19 of the '889 Patent.

141.    Claim 19 of the '889 Patent recites "[t]he frame system of claim 1, further including an image that seats against the border frame section and is disposed between a front face of the border frame section and a rear face of the border frame section," which is disclosed at least by the '589 Application's disclosure "[w]hen the backing plate 62 is not coupled to the at least one magnet 52, the open central area 26—or picture receiving area 26—is exposed from the back face 22 of the frame body 12 so that a frameable material 14 can be inserted into the picture receiving area 26." ('589 Application, Para. [0128]). "Upon the inner face 63 of the backing plate 62 magnetically engaging the one or more magnets 52, since the magnets 52 are supported by the frame body 12, the backing plate 62 becomes coupled to the frame body 12. The backing plate 62 further covers the picture receiving area 26. Accordingly, frameable material 14 becomes sandwiched between a portion of the frame body 12 and the ferromagnetic back plate 62." ('589 Application, Para. [0129]).



('589 Application, Fig. 6)

## JURY DEMAND

142.    Pursuant to Federal Rule of Civil Procedure 38(b), Mixtiles hereby requests a trial by jury on all issues so triable.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Mixtiles respectfully requests entry of judgment in its favor and against Tracer Imaging and that Mixtiles be granted the following relief:

1.  Dismissal with prejudice of Tracer Imaging's First Amended Complaint in its entirety;

2.  Denial of all remedies sought by Tracer Imaging in the First Amended Complaint;

3.  Declaratory judgement that Mixtiles does not infringe and has not infringed any claims of U.S. Patent No. 12,108,889, either directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise;

4.  Declaratory judgement that all claims of U.S. Patent No. 12,108,889 are invalid for failing to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103 and/or 112;

5.  A judgment and order awarding Mixtiles its costs, fees, and expenses and disbursements in this action;

6.  A judgment and order finding that this is an exceptional case and awarding Mixtiles' its reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

7.  An order awarding such additional relief as the Court may deem appropriate and just under the circumstances.

OF COUNSEL:

William H. Frankel
David P. Lindner
CROWELL & MORING LLP
455 N. Cityfront Plaza Drive
Suite 3600
Chicago, IL
(312) 321-4200
wfrankel@crowell.com
dlindner@crowell.com

Dated: November 5, 2025

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

*/s/ Dominick T. Gattuso*
Dominick T. Gattuso (#3630)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 472-7300
dgattuso@hegh.law

*Attorneys for Defendants Mixtiles, Ltd. And
Mixtiles USA, Inc.*