EXHIBIT 1

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM

NYSCEF DOC. NO. 10

INDEX NO. 63849/2021

RECEIVED NYSCEF: 11/29/2021

STATE OF NEW YORK
SUPREME COURT, COUNTY OF WESTCHESTER

_____

CHARLES PHILLIPS,

     PLAINTIFF,              Index Number:  _____

     Against

TRACER IMAGING LLC and
STEVEN SPIRO                   **SUMMONS**

     DEFENDANTS

_____

TO THE ABOVE NAMED DEFENDANT:

YOU ARE HEREBY SUMMONED to answer the Verified Complaint in this action, served herewith, and to serve a copy of your Answer, or if the Complaint is not served with this Summons, to serve a Notice of Appearance on the attorney for the Plaintiff within 20 days after service of this Summons, exclusive of the days of service (or within 30 days after service is complete if this Summons is not personally delivered to you within the State of New York).  In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Verified Complaint.  Westchester County is designated as the place of trial pursuant to CPLR Section 503(a) based on the fact that the Defendants, the Plaintiff and a substantial part of the events giving rise to the claims asserted in the Verified Complaint reside and occurred there, respectively, i.e., in Westchester County, New York.

Attorney for Plaintiff

/s/ Andrew S. Langsam         Dated: September 28, 2021
Law Office of Andrew S. Langsam, PLLC
28 Limestone Road
Armonk, New York  10504
914 450 6651  ASLangsam@GMail.com

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
1 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM
NYSCEF DOC. NO. 10

INDEX NO. 63849/2021

RECEIVED NYSCEF: 11/29/2021

STATE OF NEW YORK
SUPREME COURT, COUNTY OF WESTCHESTER

_____

CHARLES PHILLIPS,

        PLAINTIFF,

        Against

TRACER IMAGING LLC and
STEVEN SPIRO

        DEFENDANTS

Index Number: _____
Purchased on: _____

VERIFIED COMPLAINT
JURY TRIAL DEMANDED

Venue is Based on Plaintiff's Residence and Defendants' Residence and Place of Business

Plaintiff designates Westchester County as the Place of Trial

Plaintiff resides at 26 New York Avenue South, White Plains, New York 10606

_____

        Plaintiff Charles Phillips, an individual residing in White Plains, New York (hereinafter "Phillips" or "Plaintiff") by its attorney, Andrew S. Langsam of Law Office of Andrew S. Langsam, PLLC,  as and for his Complaint against Defendant Tracer Imaging LLC of Ossining, New York and Steven Spiro, an individual (hereinafter "Tracer" or collectively referred to as "Defendant") alleges as follows:

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
2 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021

NYSCEF DOC. NO. 10                                                    RECEIVED NYSCEF: 11/29/2021

## PRELIMINARY BASIC BACKGROUND

1.  Plaintiff Phillips is an individual residing at 26 New York Avenue South, White Plains, New York 10606.

2.  Phillips is a trained engineer with years of experience in various mechanical technologies and has been employed as a design and consulting engineer for many years.  A copy of Phillips Resume showing his extensive experience in engineering and mechanical solutions to various consumer product issues is attached hereto as Exhibit A.

3.  Phillips has, over the years, conceived, created, considered and developed a wide range of consumer and home products.

4.  Phillips has, over the years, solved many technical issues in residential, consumer and products offered for sale by retailers.

5.  Tracer Imaging, LLC (hereinafter "Tracer") is the sole Defendant herein, and is a limited liability company formed in the State of New York and actively does and is doing business at offices located at 712 Kitchawan Road, Ossining, New York 10562.

6.  Upon information and belief, Tracer has been in business for over 20 years.

7.  Upon information and belief, Tracer is primarily owned and primarily directed and managed by an individual, Steven Spiro, of Chappaqua, New York (hereinafter "Spiro").  Spiro is a resident of Westchester County.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
3 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM
NYSCEF DOC. NO. 10

INDEX NO. 63849/2021
RECEIVED NYSCEF: 11/29/2021

8.  Tracer is also directed and managed by Stan Freimuth, Vice President of Tracer and, on information and belief the Chairman of the Board of Tracer.

9.  Spiro has represented himself as being the CEO of Tracer.  Freimuth has represented himself as being Chairman of the Board of Tracer and Vice President of Tracer.

10. Upon information and belief, Tracer has been in the business of making and selling wall decorations which employ film images set into frames for attachment to walls of residences and offices throughout the United States.

11. Upon information and belief, Tracer has sold many products showing action scenes and athletes in action for years, for sales by retailers to consumers.

12. Upon information and belief, Tracer has sold many wall decoration products to various retailers in the United States for them to resell the same to the consuming public, intending the same to be attractive wall decorations and for securement to walls.

13. Upon information and belief, prior to any meeting between Tracer, Spiro and Freimuth and Phillips, Tracer did not have substantial business nor sales directly to the consuming public nor on the internet to consumers.

14. However, Tracer, through the direction and oral statements of Spiro had, on information and belief, a strong desire to develop new consumer products for

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
4 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM
NYSCEF DOC. NO. 10

INDEX NO. 63849/2021
RECEIVED NYSCEF: 11/29/2021

distribution both through retail stores in the United States and over the
internet, by Tracer, direct to consumers.

15. Tracer's desire, as stated above, existed before it commenced any and all
communications with Phillips regarding his ideas, concepts, technology and
inventions.

16.  Upon information and belief, Tracer sold limited styles of wall decoration
and frame products (SKUs) to Walgreens prior to commencing
communications with Phillips regarding his ideas, concepts, technology and
inventions and those SKUs were not creative nor patentable with respect to a
damage free frame to wall mounting system.

17. Stated another way, on information and belief, Tracer did not have any US
design nor utility patents on damage-free, removable and adjustable frame
products held to a wall with magnetics before Tracer first communicated with
Phillips on his ideas, concepts, technology and inventions.

18. Prior to commencing communications with Phillips regarding his ideas,
concepts, technology and inventions, Tracer sold primarily desk-top or
conventional nail and hook wall mounted frames to Walgreens within the
United States.  These were meant to be attached to the wall surfaces of the
consumers/buyers in a conventional manner, i.e., by hooks hammered into
walls.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
5 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10                                      RECEIVED NYSCEF: 11/29/2021

19.  The products sold by Tracer to Walgreens, prior to commencing communications with Phillips regarding his ideas, concepts, technology and inventions, did not involve the use of adhesively and removable (without damage to a wall) magnetic attraction of a magnetic element secured to the rear of the frame and a corresponding and magnetic attractive element removably, without damage to the wall, secured to a wall surface.

20.  Prior to commencing communications with Phillips regarding his ideas, concepts, technology and inventions, Tracer had significant competition in the market for sales of frames, with or without graphic images, with respect to sales to Walgreens and others, throughout the United States.

21. This Complaint relates to Phillips contracting with Tracer for Tracer to make and sell wall decorative items to retailers, including Walgreens, of new technology to Tracer which was brought to it by Phillips where Tracer still sells the Product in question and, yet, has refused to pay monies as set forth in the contract.

## JURISDICTION AND VENUE

22.  Subject matter jurisdiction exists with this Court pursuant to CPLR Section 301.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
6 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM
NYSCEF DOC. NO. 10

INDEX NO. 63849/2021

RECEIVED NYSCEF: 11/29/2021

23.  This is an action primarily for breach of a contract made within and to be executed by the Parties primarily within the State of New York and thus this Court has subject matter jurisdiction to resolve all issues relating to that Contract, including issues of breach of contract and related monetary damages.

24. This action is basically a cause of action for Breach of Contract brought by Phillips against Defendant Tracer which was entered into by Phillips, a resident of New York and Tracer, a business operating and doing business within the State of New York.

25.  Upon information and belief, Tracer was formed within the State of Delaware but has offices and headquarters primarily located within the State of New York, County of Westchester.

26. According to the Contract, attached as Exhibit B hereto, the duties and obligations of the parties are primarily to be executed within the State of New York and Tracer's offices and business activities with respect to the contract are located at 712 Kitchawan Road, Ossining, New York 10562.

27.  According to the understanding and Contract between the Parties, the obligations of the parties and duties pursuant to the Contract were to be performed by them wholly within the State of New York.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
7 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM
NYSCEF DOC. NO. 10

INDEX NO. 63849/2021

RECEIVED NYSCEF: 11/29/2021

28.  This Court has subject matter jurisdiction over this matter in that the

Contract, Exhibit B, between the parties, as attached, expressly provides that,

> "the Parties [Phillips and Tracer] agree that this Agreement will be governed and construed by the laws of the State of New York, excluding its conflict of law rules and each Party hereby consents and submits to the personal jurisdiction of federal and state courts of New York for the purposes of adjudicating any dispute regarding this Agreement.  (Paragraph 11. Miscellaneous section of the Agreement, Exhibit B, attached).

29.  A)  Tracer and Spiro are also subject to personal jurisdiction in this Court

pursuant to CPLR Section 302(a)(1) because Tracer has transacted and

continues to transact business within the State of New York and has

contracted to supply goods and services in the State of New York which

relate to the contract (Exhibit B) and the cause of action arises from the

breach of that contract and the duties and responsibilities of the Parties set

forth in the Contract are all within the geographic jurisdiction of the State of

New York and the County of Westchester, New York.

B)  Spiro is subject to the personal jurisdiction of this Court by virtue of his

residency within the County of Westchester and the acts complained of

herein occurring within the County of Westchester.

30. Venue is proper in this Court pursuant to Section 503(a) of the New York

CPLR.

31.  Specifically, Phillips resides in the County of Westchester, New York.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
8 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM

NYSCEF DOC. NO. 10

INDEX NO. 63849/2021

RECEIVED NYSCEF: 11/29/2021

32.  A)  Specifically, Tracer has a primary Headquarters and Office, and these are maintained, within the County of Westchester, New York.

B)  Specifically, Spiro resides within the County of Westchester.

33.  Thus, the Supreme Court for the County of Westchester is the proper venue for this Action in that either and/or all of Phillips, Spiro and Tracer reside in the County of Westchester, New York, when this action was and is being commenced.

34. In addition, a substantial part of the events or omissions giving rise to the claim for breach of the Contract (Exhibit B, attached) occurred within the County of Westchester.  Venue is properly placed in this Supreme Court of the State of New York.

35. The Supreme Court for the County of Westchester thus has subject matter jurisdiction over this matter, personal jurisdiction over the parties and venue is properly place therein.

## BACKGROUND FACTS AS TO THE PHILLIPS' TECHNOLOGY AND THE FORMATION OF THE CONTRACT

36.  Phillips, on his own time, with his own ingenuity, and with his own resources and funds, has long sought solutions to various mechanical problems for residential products intended to be bought and used by consumers.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
9 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM

NYSCEF DOC. NO. 10

INDEX NO. 63849/2021

RECEIVED NYSCEF: 11/29/2021

37.  In or about Summer of 2018, Phillips, using his own time, with his own ingenuity, and with his own resources conceived, developed, engineered, researched, and reduced to practice a new solution for removably hanging photos, graphic images, or sheets of art within a decorative frame onto a vertical wall, with the frame being incrementally adjustable by sliding in both the vertical and the horizontal directions, while maintaining contact with the wall, with the frame to be magnetically secured onto the wall by a consumer by the use of planar magnetic attracting element and adhesives securing the same to the frame and a magnetic attracting element to the frame-secured element, removably (without damage to the wall) secured to the wall via a foam layer and an adhesive (hereinafter "Phillips' Technology").

38.  In or about November 4, 2018, Phillips had reduced his new concepts and the Phillips' Technology to practice, created and formed a prototype, and presented his new concept and idea (using an office in Elmsford, New York) comprising the Phillips' Technology, also referred to herein and by Phillips, as the Stick-It Frame, to DNP Photo Imaging.

39. DNP (Dai Nippon Printing) was established in 1876 and is a leading full-scale printing coating technology company using dye sublimation technology and supplier of printers to over 6500 Walgreen stores.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
10 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10    RECEIVED NYSCEF: 11/29/2021

40. At the time of Phillips' presentation of the Phillips' Technology and Stick-It Frame to DNP, Phillips had also conceived, developed, engineered, researched, and reduced to practice a clever additional feature for a photo, image or graphic to be framed and held to the wall by the Stick-It Frame, i.e., a bevel graphic simulating (with laminated clear finish coating) to create a very realistic faux mat look for a piece of art or photo to be held in a frame.

41. The Stick-It Frame and the Phillips' Technology basically comprises a pair of magnetic attracting elements, one adhesively secured to the frame containing the piece of artwork and another element adhesively yet removably (without wall damage) to the wall, with the two elements being magnetically attractive to one another so that the frame is secured to the wall. The use of an flat magnetic element to the rear of the frame and an attractive flat and also magnetic or ferrous element removably adhered to the wall with a layer of foam allows for easily, cleanly, and immediate adjusting of the vertical and horizontal positioning of a piece of art or a photo onto a wall. Drawings prepared by Philips for use by Tracer in a Provisional Patent Application are attached hereto as Exhibit C.

42. The faux mat look formed by digital shading of the edges and corners surrounding the artwork within the frame and a laminated clear finish coating are additional features of the Phillips developed technology.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
11 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM
NYSCEF DOC. NO. 10

INDEX NO. 63849/2021

RECEIVED NYSCEF: 11/29/2021

43. Collectively the frame to wall magnetic mounting and adjusting system and the faux mat look are referred to hereinafter as "the Phillips-invented new technology."

44. At or about November 4, 2018, a Non-Disclosure Agreement was executed between DNP, headquartered in North Carolina for the United States, and Phillips, which obligated DNP not to use the Phillips-invented new technology, including all of its concepts, basically covering the magnetic removable wall hanging system and the faux mat look, unless DNP paid for the same or executed an Agreement with Phillips concerning the same.

45. As a consequence of the Non-Disclosure Agreement with DNP, referred to just above, Phillips, on or about March, 2019, sent DNP several prototypes and samples of the Phillips-invented new technology.

46. Phillips referred to his Phillips-invented new technology as a Stick It frame.

47. Samples of the Stick It frame were provided to DNP for its further review and further consideration of commercialization.

48. On information and belief, DNP had well-established commercial ties to many large retailers in the United States for services including printing for consumers of their own photos, images, and graphics at those retailers by use of DNP printers.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
12 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM

NYSCEF DOC. NO. 10

INDEX NO. 63849/2021

RECEIVED NYSCEF: 11/29/2021

49.  On or about October 2019, DNP, with Phillips permission and approval, presented the Phillips-invented new technology, to professional Buyers of print-related merchandise for Walgreens, Inc. for their consideration in buying and reselling the same to consumers.

50.  The Buyers for Walgreens (as had management at DNP) expressed keen interest in the Phillips-invented new technology and believed the inventions and concepts were clever, new, useful, and highly likely able to be commercialized in the stores.

51.  In or about late November 2019, Phillips sent DNP an improved Stick It Frame with a Adhesively Securable, yet Removable, Magnetic Wall Pad and a magnetically attractive Frame thereto (further development of the Phillips-invented new technology).

52.  The Phillips-invented new technology still comprised a wall mounted, removable and reusable, adhesively secured magnetically attractive pad and a magnetically receptive second pad secured on the rear of a simple art frame, the latter for magnetically attracting and securing the same (with up-down and left-right repositionable flexibility) to the adhesively securable magnetic pad removable (without damage to the wall) located on the wall.

53.  The Phillips-invented new technology, as described, provided vertical and horizontal adjustability after the frame is magnetically secured to the pad on

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
13 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM
INDEX NO. 63849/2021
NYSCEF DOC. NO. 10
RECEIVED NYSCEF: 11/29/2021

the wall so that a consumer could first secure the removable and reusable (without damage to the wall) magnetic pad to the wall and then secure the magnetic receptive pad of the frame thereto, and then adjust the frame up and down and side to side as the consumer desires, without removal of the frame and artwork form the wall.

54.  The Phillips-invented new technology system described above is especially useful in mounting a set of frames on a wall in that it allows for precise alignment and spacing of the frames adjacent to one another, even if the placement of the wall mountable magnetic pads of each frame or on each section of the wall is not precisely aligned with another such pad.

55. The Phillips-invented new technology allows for adjustment of one or more magnetically held frames onto a wall without damage caused by the conventionally needed multiple nails or hanging hooks hammered into the wall.

56.  On or about December 6, 2019, between about 1 pm and 1:45 pm, at Spiro's request, Phillips travelled to Tracer, at Tracer's request and invitation and Phillips personally met with representatives of Tracer, both Spiro and Stan Freimuth, Vice President and Chairman of the Board of Tracer, for the purpose stated by Tracer of seeking Phillips' engineering acumen and knowhow in problem solving an issue that Tracer was experiencing and

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
14 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10    RECEIVED NYSCEF: 11/29/2021

presented with regarding wall mounting of printed hard glass pieces relating to a Corning product - Corning Gorilla Glass.

57. After discussion of the Corning Gorilla Glass issue and Phillips' indication that he would consider solutions, Phillips decided to introduce and present his Phillips-invented new technology to Tracer for their consideration.

58. On or about December 6, 2019, Phillips actually left one or more samples of his Phillips-invented new technology comprising, basically, magnetic wall hanging products (frames with a flat magnetic pad on the rear and wall securable elements with a flat and magnetically attractive pad to the pad on the frame) at the offices of Tracer with Spiro and Freimuth, per their immediate expressed excitement, interest and for their immediate review.

59. Both Phillips and Tracer clearly understood that the disclosure by Phillips of his Phillips-invented new technology was to be maintained confidential, proprietary to Phillips, and that Tracer would not make, use, sell nor offer to sell the same without Phillips permission and approval.

60. Soon thereafter, at or about December 9, 2019, DNP presented the Phillips-invented new technology it had obtained from Phillips, to Buyers of Walgreens. That presentation included the now-referred to Stick-It Frame and the faux mat look via a digital bevel-looking graphic and clear overlayer, i.e., the Phillips-invented new technology.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
15 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM          INDEX NO. 63849/2021
NYSCEF DOC. NO. 10                                                RECEIVED NYSCEF: 11/29/2021

61.  On December 18, 2019, Stan Freimuth a Tracer Vice President contacted Phillips, at the direction of Spiro, for commencement of negotiations on obtaining rights to the Phillips-invented new technology and, specifically, the right for Tracer to exclusively make and sell the same in the US and elsewhere.

62. As a negotiating "ploy" on behalf of Tracer, on December 18, 2019, Freimuth indicated in an email to Phillips that Tracer would be spending tremendous amounts of money for "molds."

63.  That email was Tracer's first attempt to reduce or eliminate Phillips' requested royalty rate to Tracer for a license to the Phillips-invented new technology.

64. A) On December 20, 2019, Spiro, representing Tracer, visited Walgreens' Headquarters and conducted a meeting with a Buyer of frames and photos, and printing for customers of Walgreens.

B)  At that time, on information and belief, Walgreens was seeking a wall mounted framing system.

C)  At the same time, Tracer had no such system available nor even considered.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
16 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM

NYSCEF DOC. NO. 10

INDEX NO. 63849/2021

RECEIVED NYSCEF: 11/29/2021

D)  As a consequence of the Spiro visit to Walgreens, Spiro seems to have observed on the desks of the professional buyer --the previously presented by DNP Phillips-invented new technology.

65.  At that meeting, Spiro actually observed a highly distinctive package in the buyer's offices at Walgreens, the Phillips-invented new technology which was presented by DNP to the Buyer of Walgreens, samples having been previously provided by Phillips to DNP for consideration and presentation.

66. On information and belief, Spiro and Tracer realized that an opportunity for a new product for sale to Walgreens was being presented by another, DNP, and as a consequence, Spiro and Tracer sought to further and quickly conclude and negotiate the terms of an exclusive Agreement between Tracer and Phillips, relating to the Phillips-invented new technology.

67. Tracer, already interested in striking a deal with Phillips for Tracer to become the exclusive licensee of the Phillips-invented new technology, became then fully focused on and very much interested in executing a deal with Phillips.  Tracer was very interested in gaining exclusivity to the Phillips-invented new technology.

68.  As a consequence of negotiations between the Parties, Phillips and Tracer mutually executed a Technology Transfer and Licensing Agreement on

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
17 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10                                      RECEIVED NYSCEF: 11/29/2021

January 3, 2020 (hereinafter "the Technology Transfer and Licensing Agreement" and also referred to herein as the "Contract").

69. The Technology Transfer and Licensing Agreement and the Contract was signed by Spiro, as CEO of Tracer and by Phillips, individually.

70. The Technology Transfer and Licensing Agreement and the Contract were executed for an effective date of January 1, 2020.

71. As a consequence of the terms of the Technology Transfer and Licensing Agreement, Phillips was told to provide and actually did provide to Tracer's patent and intellectual property lawyers, Leason Ellis, located and doing business at One Barker Avenue, White Plains, New York 10601, all of his drawings, write-ups, descriptions, specifications, and drawings and know how relating to the Phillips-invented new technology.

72. Leason Ellis and Tracer asked Phillips for his materials, know how, and work product relating to the Phillips-invented new technology so as to enable Tracer to place on file with the US Patent Office, a provisional, US Utility Patent Application covering the Phillips-invented new technology.

73. Copies of the mechanical drawings and descriptive text provided to Tracer and Leason Ellis are attached hereto as Exhibit C.

74. A US Provisional Utility patent application was filed by Leason Ellis on behalf of its client Tracer on January 4, 2020, which application was assigned

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
18 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10                                        RECEIVED NYSCEF: 11/29/2021

Serial No. 62/957,195 (hereinafter either "the first Provisional Application" or "the '195 application").

75. The first Provisional Application identified Phillips as the first named inventor of the Phillips-invented new technology and yet Leason Ellis, as patent attorneys, included Spiro as a named co-inventor.

76. The first Provisional Application could lawfully only have identified Spiro as a co-inventor because Leason Ellis included material in the provisional application relating to a) a cross-shaped leveling device (which was not needed for the use by a consumer of the Phillips-invented new technology) and b) a recess in the rear of an injection molded frame if that were to be used but, rather, this was an obvious, vain and ego-driven attempt by Spiro, Tracer, and Leason Ellis to have the application appear as if Tracer and/or Spiro were actual inventors and/or with ownership rights to the Phillips-invented new technology, via the filing in joint names of this new provisional application directed to the Phillips-invented new technology.

77. The '195 Application was accorded a filing date of January 4, 2020.

78. On information and belief, Tracer, through Leason Ellis, also filed another US Provisional Utility Patent Application No. 62/957,589 (hereinafter "the '589 Provisional Patent Application" or "the second Provisional Application") likely related to the Phillips-invented new technology. That

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
19 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10                                       RECEIVED NYSCEF: 11/29/2021

second Provisional Application was filed on January 6, 2020.  To date, a copy of the second Provisional Application has not been provided to Philips and Philips is thus unsure if he is or is not identified as the inventor or as a co-inventor of that technology nor even if that subject matter relates or not to the Phillips'-invented new technology.

79. On information and belief, however, the technology of the second Provisional Application, i.e., the '589 Provisional Application relates to the Phillips-invented new technology in that Tracer identified both US Patent applications, the '195 and the '589 Provisional Applications, as parent applications to a newly filed US non-provisional utility patent application.

80.  The non-provisional US Utility Patent Application filed by Tracer on the Phillips-invented new technology was filed January 4, 2021 and identified as Serial No. 17/140,254 with named co-inventors of Phillips and Spiro.

81.  Prior to Phillips's disclosure of the Phillips-invented new technology, neither Spiro nor anyone else at Tracer had considered, developed, engineered, reduced to practice nor made nor sold the Phillips-invented new technology.

82. Prior to Phillips's disclosure of the Phillips-invented new technology, neither Spiro, Tracer nor any other employee or consultant to Tracer had considered, conceived, developed, reduced to practice any photo or art-holding frame

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
20 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM
NYSCEF DOC. NO. 10

INDEX NO. 63849/2021
RECEIVED NYSCEF: 11/29/2021

mounting system including magnetic materials adhesively secured to the rear of the frame and to the wall for allowing vertical and/or horizontal adjustment of the frame on the wall, where the magnetic pad element on the wall was removable without damage to the wall and, yet, allowed for relative up-down and left to right adjustment of the frame on the surface of the wall.

83. During negotiations between Tracer and Phillips of the Technology Transfer and Licensing Agreement and the Contract, Tracer asked Phillips for his "wants" in negotiating and transferring the Phillips-invented new technology exclusively to Tracer.

84. Phillips expressed an interest in obtaining a royalty on sales to retailers, a different royalty on sales to consumers and in becoming a full time employee of Tracer to work on new projects, but especially the Phillips-invented new technology and its roll out to Walgreens (which Phillips had personally and through DNP developed as a realistic potential purchaser for this new product line).  Tracer was told of Phillips' desire for royalties on frames and hanging systems, to be sold on Tracer's soon to be established website selling Phillips-invented new technology direct to consumers.

85. Tracer, in response, initially refused to hire Phillips as an employee as a "term" of the Technology Transfer and License Agreement, indicating that it

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
21 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10                                                RECEIVED NYSCEF: 11/29/2021

does not provide employment contracts but that it would hire Phillips as an employee, like other employees were hired.

86.  Tracer, through its counsel, Leason Ellis filed a US utility non-provisional utility patent application relating to the Phillips-invented new technology and relied upon, for patent priority purposes, the earlier filed US first and second Provisional Applications.  That non-provisional patent application was filed by Tracer even though it expressed in writing that it had no interest in commercializing the Phillips-invented new technology.

87.  That representation by Tracer was an absolute fabrication and falsehood.

88.  Tracer through Leason Ellis requested that Phillips sign the Declaration of the new US non-provisional utility patent application.

89.  Tracer, through Spiro, represented to Phillips that this application would be filed with the US Patent Office but that Tracer would **not** be commercializing the products set forth in that application.  That representation by Tracer and Spiro was false and untrue.

90.  Phillips refused to sign that Declaration.

91.  Phillips-invented new technology, the subject matter of the Technology Transfer and License Agreement and the Contract, is clearly defined therein.

92.  As an expressed term of the Technology Transfer and License Agreement, Tracer obtained an Assignment of the Phillips-invented new technology,

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
22 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM
INDEX NO. 63849/2021
NYSCEF DOC. NO. 10
RECEIVED NYSCEF: 11/29/2021

including all rights to apply and obtain US and foreign patents related thereto [if they should issue] and the right to obtain all of Phillips' know how related thereto.

93.  A)  As an expressed term for the Technology Transfer and License Agreement, Phillips obtained the right to receive from Tracer a royalty based on Products (as defined in the Contract) sold to the public through Walgreens and/or other retailers and/or distributors and even royalties on sales of Products, as defined in the Technology Transfer and License Agreement, if the Products were sold directly by Tracer to consumers.

B)  The breadth of the definition of licensed Products set forth in the Contract, upon which Royalties are due to be paid by Tracer to Phillips, includes net sales by Tracer of:

"a magnetic mounting system on frames of various sizes … where such a mounting system includes one or more of (1) a flexible ferrous (magnetic receptive) flexible (sic) material with a "special" adhesive that is both repositionable but will stay on the wall indefinitely if desired and if removed, it will  not remove the paint from the wall; and (2) a flexible magnetic material that is adhered to the back of a frame, as specified in the technical documents provided by [Phillips]…"

and "software to create a 'faux' beveled mat appearance on a printed image,"

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
23 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM
NYSCEF DOC. NO. 10

INDEX NO. 63849/2021
RECEIVED NYSCEF: 11/29/2021

## ALLEGED CHANGES and FUTHER DEVELOPMENT OF PHILLIPS-INVENTED NEW TECHNOLOGY

94.  Tracer, through an email of Spiro, advised Phillips on or about January 8, 2020, that it wanted to change the frame from one which was assembled from four pieces conventionally connected at the mitered corners to a two part injection molded frame.

95. Tracer, to avoid the payment of any and all royalties due Phillips, has concocted a new history to the development of the Philips-invented new technology, claiming, inter alia,  that the Products sold by Tracer and then to consumers by Walgreens is materially different from that which Phillips brought and disclosed to it; that the technology was not fully developed by Phillips when it was presented to Tracer; that it is not patentable; that it was non-functional and that there were issues with the roll out of the product by Walgreens and Tracer.

96.  The Tracer rationale set forth in the above paragraph was bogus, belied by fact and patently false.

97.  The Tracer "rationale" set forth above was a clear and transparent attempt by Tracer and Spiro, when discussed with Phillips, to evade the agreed upon and negotiated payment of the royalties due Phillips pursuant to the Contract, which Spiro repeatedly complained of, after execution of the Contract, as being "too high."

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
24 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10                                      RECEIVED NYSCEF: 11/29/2021

98. A)  Tracer is in clear violation of the Technology Transfer and License Agreement and is in blatant breach of the Contract by not paying Phillips the royalties due him under the Contract.

B)  Tracer has sold directly to consumers through its own website TilePix products with STICK AND SLIDE technology – the Phillips-invented new technology, products upon which Tracer is responsible for accounting of net sales and payment of Royalties to Phillips.

C)  Tracer has sold to Walgreens TilePix products with STICK AND SLIDE technology –the Phillips-invented new technolog, products upon which Tracer is responsible for accounting of net sales and payment of Royalties to Phillips.

D)  The TilePix products with STICK AND SLIDE technology sold by Tracer are commercial products that incorporates the Stick It Frames Mounting System as defined in the Contract. Accounting and Royalties for net sales are due Phillips.  A website showing and describing the Tracer Products is attached as Exhibit D.

E)  Tracer's failure to account to Phillips and its failure to pay Royalties to Phillips are material breaches of the Contract.

F)  The TilePix products with STICK AND SLIDE technology as sold by Tracer comprise and incorporate:

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
25 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021

NYSCEF DOC. NO. 10    RECEIVED NYSCEF: 11/29/2021

"a magnetic mounting system on frames of various sizes … where such a mounting system includes one or more of (1) a flexible ferrous (magnetic receptive) flexible (sic) material with a "special" adhesive that is both repositionable but will stay on the wall indefinitely if desired and if removed, it will not remove the paint from the wall; and (2) a flexible magnetic material that is adhered to the back of a frame, as specified in the technical documents provided by [Phillips]…."

G) The failure by Tracer to pay Phillips the Royalties pursuant to the Contract is a material breach of the Technology Transfer and License Agreement.

## OTHER IMPROPRIETIES AND BREACHES OF THE AGREEMENT BY TRACER

99. No later than January 12, 2020, Phillips conceived of his idea to refer to his new technology (the Phillips-invented new technology) in the commercial marketplace as a STICK & SLIDE photo frame to wall attachment system.

100.    Tracer, as a condition of execution by Phillips of the Contract, hired Phillips as an engineer and consultant on January 13, 2020.

101.    In late January 2020, Phillips disclosed to Spiro the STICK & SLIDE trademark/name he thought could be used to commercial advantage in sales of the Phillips-invented new technology.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
26 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10                                          RECEIVED NYSCEF: 11/29/2021

102.    Thereafter, Leason Ellis performed a search on the STICK & SLIDE trademark proposed by Phillips and provided their opinion on the availability of the same for this new product line.

103.    On or about January 14, 2020, Phillips attended a meeting on behalf of Tracer with Creative Engineering Inc. of Bronxville, New York (with Ryan Kelly of Creative Engineering) discussing the 3D CAD engineering and development of an injection molded frame.  At that time, Phillips had already provided a sample of his frame technology and a CAD drawing to enable the considered transition to an extruded molding for a frame for the Phillips-invented new technology, as Spiro desired that.

104.    During the period extending from about January 15, through the 30th of January, 2020, Phillips provided, at Tracer's demand and pursuant to the Contract, Mr.Ron Glaza, Tracer's Purchasing Manager, with material specifications and component supplier information to facilitate the manufacture and large scale and commercial production of the Phillips-invented new technology.  Phillips was fully compliant with his duties under the Contract and his responsibilities as an employee and provided all information, know-how, contacts, and materials he had to facilitate and enable Tracer in the anticipated launch of this new product line and technology.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
27 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021

NYSCEF DOC. NO. 10                                                    RECEIVED NYSCEF: 11/29/2021

105.    At or about the same time,, Walgreens, contacted by Tracer for sales

of the Phillips-invented new technology frames and wall hanging system

insisted on maintaining the dimensions and look of the original frame

brought to it by Phillips, even though the first iteration of the frame made by

Tracer differed.

106.    In or about February 5, 2020, Phillips had a follow up meeting with

Creative Engineering Inc.  At this meeting discussing the "look" of the

original frame Phillips had brought to Tracer and the cheaper and Walgreen's

unaccepted "look" of the extruded or injection molded frame then being

considered by Tracer, Phillips disclosed his new and creative idea that miter

lines could be quickly and inexpensively scored in the four corners of the

injection-molded frame so that it would appear more like a traditionally

presented frame and less like a plastic, injection molded and less expensive

replica.

107.     In or about March 23, 2020, Tracer, through Spiro, requested and

demanded that Phillips work remotely.

108.    On or about April 23, 2020, and rather soon after hiring Phillips as an

engineer but seemingly only after Tracer had gleaned all of Phillips' know

how, technology, contacts, sources and new ideas, Tracer placed Phillips on

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
28 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM
INDEX NO. 63849/2021
NYSCEF DOC. NO. 10
RECEIVED NYSCEF: 11/29/2021

furlough, without pay, yet while still requesting Phillips to support his and Tracer's project, the roll out of the Phillips-invented new technology.

109.        A)  Phillips, during the furlough period had continued to work at Tracer's request (indeed requiring Phillips to go into the Tracer offices on at least two occasions) and without pay to Phillips, on further developing and trying to change the product to suit Tracer and to support the new Walgreen's product line comprising Phillips-invented new technology.

B)  Spiro advised Phillips that it was in his "vested interest" to continue to work on the project even without weekly salary.

110.        On July 31, 2020, Tracer terminated Phillips.

111.        Significantly, again, Spiro tried to leverage health insurance continuation for Phillips, post termination (and possibly in violation of COBRA) by demanding Phillips execute a new agreement which, if executed by Phillips, would have constituted a full Release to Tracer for its prior conduct, breaches, and improprieties.

112.        Tracer sought to cut Phillips off from benefiting from his rights to his created and invented new technology, his STICK AND SLIDE-created trademark, his know how and the terms of the Contract.

113.        Phillips refused to execute this proposed new Agreement.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
29 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM

NYSCEF DOC. NO. 10

INDEX NO. 63849/2021

RECEIVED NYSCEF: 11/29/2021

114.    Tracer claimed, at the time, that the reason behind Phillips' termination was based on COVID-19 but that, too, was a fabrication as Tracer, on information and belief, had continued on with employees hired after Phillips.

115.    Tracer, at the time of terminating Phillips, enjoyed continued sales in excess of its prior sales and, in any event, also obtained funds from the US Government, as PPP funds – i.e., funds meant to ensure that employees were not laid off due to the COVID-19 pandemic.

116.    Termination of Phillips without cause, whose hiring was a condition of the negotiation of the Contract, and in violation of the terms of Tracer obtaining PPP funds from the US Government was bad faith and likely is actionable and was illegal.

117.    A)  Rather, it appears that Tracer terminated Phillips as a consequence of Phillips' completion of work on his new technology and transferring all of the same to Tracer and Phillips' refusal to execute a new Contract with Royalties in a lower amount than originally agreed.

B)  The renegotiation of the Royalty rate was orally requested by Spiro on June 15, 2020 and again on July 6, 2020.

118.    Tracer only "hired" Phillips as a consequence of the urgency (from Tracer's perspective) of negotiations leading up to the Contract, so as to

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
30 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM

NYSCEF DOC. NO. 10

INDEX NO. 63849/2021

RECEIVED NYSCEF: 11/29/2021

allow Tracer to obtain rights to Phillips-invented new technology but, clearly, Tracer had no intention, after the signing of the Contract to maintain Phillips after he a) had signed the Contract and b) had fully transferred all of his vast know how, contacts, suppliers, technology and information to Tracer.

119.     Phillips was furloughed by Tracer even though two later-hired employees (one an engineer the other administrative, Chief Product Officer, to support the online Tracer business to be developed with Phillips-invented new technology) were retained.

**TRACER TRIED TO STEAL OTHER OF PHILLIPS' INTELLECTUAL PROPERTY – THEFT OF TRADE SECRETS FALSE REPORTING BY SPIRO OF A CRIME ALLEGED AS COMMITED BY PHILLIPS**

120.     However, even before Phillips and Tracer executed the Contract and before Phillips was hired at Tracer, Phillips had advised and exhibited to Tracer and Spiro another new invention (a wall-mounted photo panel floated on a wall using magnetics – referred to as "FLOAT IT") that Phillips had developed.

121.     In early March 2020, Phillips brought samples from his home of the FLOAT IT wall mounted photo panel invention he had developed and showed it to both Spiro and Freimuth of Tracer.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
31 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10                                     RECEIVED NYSCEF: 11/29/2021

122.    Spiro and Tracer knew that Phillips' new invention – the FLOAT IT wall mounted photo panel, was considered by Phillips to be proprietary to Phillips and his own intellectual property.

123.    Spiro expressed immediate interest in the samples shown to him and the new FLOAT IT wall mounted photo panel concept and handled/observed the samples that Phillips used to explain the same.

124.    Spiro immediately orally offered Phillips that he could have the same terms on licensing to Tracer this new FLOAT IT wall mounted photo panel invention as he had already negotiated for the Phillips-invented new technology in the Contract.

125.    Phillips refused that offer.

126.    On the day after Phillips was furloughed by Tracer, April 23, 2020, Tracer, through Leason Ellis filed to register on behalf of Tracer, the trademark STICK AND SLIDE for the Phillips-invented new technology, based on Tracer's expressed intention to adopt and use the same in US commerce, knowing full well STICK AND SLIDE was the trademark Phillips had created on his own and for his own invented technology before he joined Tracer as an employee.

127.    On or about June 15, 2020, Spiro called Phillips and again requested to renegotiate the royalties due Phillips.  Phillips again refused.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
32 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10                                             RECEIVED NYSCEF: 11/29/2021

128.     Spiro stated, among other reasons for the attempted renegotiation, that Walgreens was not interested in the bevel faux graphics for the mat look and, yet, Walgreens has, indeed, extensively use the bevel faux graphics to simulate a mat finish in the products it has sold and offered to consumers.

129.     On or about July 6, 2020, Spiro again called Phillips to request renegotiation of the royalties in the Contract (this time stating that the frame was injection molded and not the same as Phillips had originally brought to Tracer--a four piece frame).  Phillips refused.

130.     The "difference" between a four piece frame and an injected molded frame is irrelevant to the definition of Products upon which Royalties are due to be paid by Tracer to Phillips, pursuant to the Contract.

131.      Soon after Phillips' refusal to renegotiate the Contract, Phillips was terminated in his employment at Tracer by Spiro/Tracer on July 31, 2020.

132.     The next business day, when Phillips went to pick up his desk top/personal items from his desk at Tracer, Phillips waited in the Tracer parking lot for Spiro to arrive.  However, on that day, Spiro, unlike Spiro's daily work routine for months, did not arrive as he had in the past.

133.     Rather, Phillips waited and waited and then ultimately entered the Tracer building to gather his personal items.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
33 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10    RECEIVED NYSCEF: 11/29/2021

134.    As a consequence, Phillips, entered the open offices, announced himself to former fellow employees, and collected his things from his desk- taking with him only his personal, hand-made and developed samples (made at his expense and on his time and fully developed by Phillips even before he executed the Contract and was hired as an employee) and relating to the other new technology i.e., the FLOAT IT samples Phillips had made of his new product which were presented to Spiro and Freimuth of Tracer.

135.    A)  Spiro, upon his later arrival, called the local (Yorkown) police department and referred to Phillips as an unwelcome "trespasser" and thief of Tracer's property.

B)  Spiro represented to the Yorktown Police Officer that Phillips had refused to leave the offices of Tracer, which was a lie.

C)  Phillips had already packed up his personal items when he was asked to leave the offices.  He immediately did so.

136.    The Spiro-made allegations regarding Phillips' conduct at the offices on that last day were completely fabricated by Spiro and he knowingly reported a false crime.

137.    The police officer on the scene immediately contacted Phillips that same morning and requested that Phillips return to the Tracer offices for prompt discussion and resolution.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
34 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM
NYSCEF DOC. NO. 10

INDEX NO. 63849/2021
RECEIVED NYSCEF: 11/29/2021

138.    In fact, the Yorktown Police Officer stated that "If [Phillips] returns, he wouldn't be arrested."  This was understood by Phillips as if he didn't return, he would be arrested.

139.    Phillips accommodated that Officer's request and immediately returned to the Tracer offices.  Phillips, in response and in front of Spiro's contrary stated position, pointed out that the samples of the new FLOAT IT invention were personally his, were brought to and left by him at the Tracer offices specifically to present to Spiro and Freimuth, the Vice President of Tracer, for their consideration, as they had expressed a desire to license the new product Phillips had developed prior to his employment at Tracer and, yet, Spiro insisted to the Yorktown Police Officer that the samples were Tracer's not Phillips.

140.    Spiro knowingly and with malice lied about the origin of the FLOAT IT samples.  Spiro knew all along that the samples were the property of Phillips.

141.    A) However, Spiro convinced the Police Officer that it was appropriate for Tracer to retain one of Phillips' samples of the new FLOAT IT invention, when he knew he had no right thereto.

        B) Spiro suggested to the Police Officer the possibility that Phillips was armed which, of course, Spiro also knew to be untrue.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
35 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM
NYSCEF DOC. NO. 10
INDEX NO. 63849/2021
RECEIVED NYSCEF: 11/29/2021

142.    Spiro knew that retaining a sample of Phillips' own technology, not subject to the Contract, was improper. Indeed, the new FLOAT IT wall mounted photo panel sample seized by the Yorktown Police Officer at Spiro's demand and misrepresentation and held to this day by Spiro and Tracer was capable of being proven to be a sample generated and paid for personally by Phillips, long before he became an employee of Tracer and executed the Contract.

143.    However, based on Spiro's representation, on August 3, 2020, and Spiro's position of apparent authority and corporate superiority, a Yorktown Police Report was generated and Phillips was denied return of his own personal property.

144.    Tracer did not return a sample which clearly was the property of Phillips even though Spiro had represented to the Officer at the Tracer offices, on that day of taking the property by Spiro, that he would "go through the merchandise and return that which was truly Phillips."

145.    Tracer and Spiro did NOT return the Phillips' materials which knowingly to Spiro was Phillips' confidential and intellectual property and upon which Spiro and Tracer had expressed an interest in a new second contract covering the FLOAT IT wall mounted photo panel on terms similar to the Contract concerning the STICK AND SLIDE technology.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
36 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM          INDEX NO. 63849/2021
NYSCEF DOC. NO. 10                                        RECEIVED NYSCEF: 11/29/2021

146.     On or about September 4, 2020, Phillips filed a Police Report with Yorktown Department of Police regarding the stolen and improperly kept personal property which Spiro and Tracer had improperly retained.

147.     Phillips presented Officer Pavletic of the Yorktown Police Department with concrete and clear evidence of proof of ownership of that improperly retained sample by Spiro/Tracer--in the form of an invoice and a letter from The Color Group Inc. of Hawthorne, NY who had printed the artwork long before Phillips had signed the Contract and before Phillips become an employee of Tracer.

148.     Tracer has still not returned that sample to Phillips.

149.     This failure to return intellectual property to Phillips is actionable and a trade secret misappropriation and comprises a tort of conversion.

**BREACH OF THE CONTRACT – FAILURE TO PAY ROYALTIES**

150.     On or about December 30, 2020, Phillips sent a Notice Letter to Tracer, received by Spiro, indicating that Royalties for all sales made under the Technology Transfer and License Agreement would be due on March 1, 2021.

151.     To date, Tracer and Spiro have not accounted for Net Sales of Products nor paid any royalties (except for an advance Royalty as set forth in

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
37 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM
NYSCEF DOC. NO. 10

INDEX NO. 63849/2021
RECEIVED NYSCEF: 11/29/2021

the Contract) to Phillips on the sale of Products sold by Tracer, as set forth in the Technology Transfer and License Agreement.

152.     Tracer launched the TilePix product with STICK AND SLIDE technology in 2020 which is substantially the same product as that originally designed, developed, and brought to Tracer by Phillips and the subject of the Contract.

153.     The Phillips-invented new technology is also referred to herein as the STICK AND SLIDE product (the trademark conceived by Phillips for his technology) and, yet, adopted and used by Tracer for its sale of products to Walgreens and the consuming public.

154.     The TilePix STICK AND SLIDE products made and sold by Tracer are the Phillips-invented new technology.

155.     The TilePix STICK AND SLIDE products have been offered for sale by Walgreens in its 6,500+ Walgreen stores in the United States.

156.     The TilePix STICK AND SLIDE products sold by Tracer have also been offered for sale directly to consumers by Tracer on and over its dedicated website for the Phillips-invented new technology at www.tilepix.com.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
38 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10    RECEIVED NYSCEF: 11/29/2021

157.    A) Yet, to date, there has been no accounting, no payment of royalties to Phillips pursuant to the Contract – only denials by Tracer of its responsibility to pay Royalties to Phillips.

B)  Tracer is in breach of the Contract by its failure to account and pay Royalties due Phillips.

158.    All of the reasons and grounds relied upon by Tracer for its failure to account and pay Royalties are nonsense, unsupported by fact, and irrelevant to the Tracer liability.

159.    Rather, Leason Ellis (attorneys for Tracer) have responded to various requests by representatives of Phillips that Tracer is not liable for any royalties, that Tracer is not in breach and that any involvement by Phillips with a customer, including Walgreens, in any such controversy will subject Phillips to liability for damages.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST TRACER

160.    Phillips repeats and realleges the allegations set forth in paragraphs 1-160, as if fully repeated and realleged herein.

161.    The Technology Transfer and License Agreement referred to herein provides for Royalties to be paid by Tracer to Phillips at $0.13 per 8 inch x 8

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
39 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM
NYSCEF DOC. NO. 10

INDEX NO. 63849/2021

RECEIVED NYSCEF: 11/29/2021

inch frame of Products sold to retailers, or 5% of Net Sales of larger frame sizes of Products sold to retailers, and the same 5% of sales to 3rd parties for all orders fulfilled by Tracer.

162.    In addition, the Technology Transfer and License Agreement referred to herein provides for Royalties to be paid to Phillips at 2.5% of Net Sales of any size frames of Products which are made directly to consumers.

164.  Payments of Royalties pursuant to the Technology Transfer and License Agreement were to be made on a quarterly calendar basis, within 60 days of the close of each quarter.

165. Upon information and belief, Tracer has made significant sales of Products to at least Walgreens during 2020 and continuing to date.

166. To date Tracer has not accounted for sales nor paid any royalties to Phillips.

167. Tracer is in material breach of the Technology Transfer and License Agreement.

168. Phillips is entitled to the full accounting and payment of Royalties, less the prepayment by Tracer of $25,000., which was a one-time prepayment set forth in the Contract as an advance against future royalties.

169. On information and belief, the sales of Products by Walgreens alone and the Royalties due therefore well exceed the advance given to Phillips.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
40 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021

NYSCEF DOC. NO. 10    RECEIVED NYSCEF: 11/29/2021

170. On information and belief, Tracer is in breach by not paying the full
Royalties due Phillips and by not providing information regarding Net
Sales of Products pursuant to the Technology Transfer and License
Agreement.

171. Phillips has repeatedly requested an accounting and payment of the
Royalties for Net Sales of Products made by Tracer pursuant to the
Technology Transfer and License Agreement.

172. Tracer has refused to provide the same and is in breach of the Technology
Transfer and License Agreement.

173. A)  The Technology Transfer and License Agreement defines Products
upon which Royalties for Net Sales are due Phillips from Tracer as:
"commercial products that incorporate the Stick It Frames Mounting
System."

B)  The TilePix Products with STICK AND SLIDE technology sold by
Tracer are Products within the definition of the same in the Contract.

174. The Technology Transfer and License Agreement defines the Stick It
Frames Mounting System as:

"a magnetic mounting system on frames of various sizes and software to
create a 'faux' beveled mat appearance on a printed image, where such a
mounting system includes one or more of (1) a flexible ferrous (magnetic
receptive) flexible material with a 'special' adhesive that is both
repositionable but will stay on the wall indefinitely if desired and if removed,
it will not remove the paint from the wall; and (2) a flexible magnetic

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
41 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10                                                           RECEIVED NYSCEF: 11/29/2021

material that is adhered to the back of a frame, as specified in the technical documents provided by [Phillips]."

175.  A copy of the Technology Transfer and License Agreement is attached hereto as Exhibit B and the definition of Products upon which Royalties are due is set forth in Schedule A Definitions, thereof.

176.  At the beginning of the Contract, the Technology Transfer and License Agreement contains "Premised" language indicating that Tracer "desires to acquire from Phillips the Transferred Technology **for the purpose of allowing Tracer to develop and market Products using the Transferred Technology**." (Emphasis Added).

177.  Thus, Tracer, at the onset of the Technology Transfer and License Agreement knew the general scope and subject matter of Phillips-invented new technology and Tracer well understood and knew that the product may require Tracer to "develop" the same for marketing.

178.  In response to Phillips demands for an accounting and payment of Royalties and Tracer's refusal to provide the same, one of the many nonsensical "defenses" and arguments made by Tracer is that Phillips provided an incomplete and non-working system and that required Tracer

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
42 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10    RECEIVED NYSCEF: 11/29/2021

to develop and engineer further improvements to the transferred technology of Phillips.

179. This defense and argument is, as mentioned, sheer nonsense and not supported by the facts and, in any event, the Contract clearly set forth that development might be required.

180. The only reason for any further consideration of changes to the Stick It Frames Mounting System provided by Phillips to Tracer (sold by Tracer as the TilePix with STICK AND SLIDE technology) pursuant to the Technology Transfer and License Agreement was because of Tracer's desire to change the frame provided by Phillips to Tracer to an injection molded frame and to make a less expensive product – i.e., to not sell a frame made of several individual pieces fabricated and held together.

181. However, that "decision" by Tracer was ill-advised and resulted in the consideration of other design, material and specification changes, none of which were required and, indeed, Tracer ultimately reverted back to substantially the original specifications and materials as those provided by Phillips to Tracer pursuant to the Technology Transfer and License Agreement.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
43 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM

NYSCEF DOC. NO. 10

INDEX NO. 63849/2021

RECEIVED NYSCEF: 11/29/2021

182. Another ill-advised "defense" and argument presented by Tracer as to why Tracer has not provided a Royalty Report nor Royalties to Phillips relies upon Tracer's misinterpretation of the definition of Products.

183. Tracer, to avoid Royalties, now takes the position that "Products," defined in the Technology Transfer and License Agreement, necessarily means that the Stick-It Frame Mounting System, to be subject to Royalties payable to Phillips, requires sale, along with the frame mounting system, of software to create a faux beveled mat appearance.

184. The STICK AND SLIDE Frames sold by Tracer to and through Walgreens to consumers as TilePix with STICK AND SLIDE technology does not include the sale of software and thus there are, the Tracer argument follows, no need to report nor pay Royalties to Phillips.

185. This is a clear canard and makes little sense at all.  The definition of Products set forth in the Contract includes payment of Royalties on  any Stick-It Frame Mounting System and faux mat software, if it is sold by Tracer to Walgreens, but a frame need not be sold with that software nor have a faux beveled mat appearance for the Product to be fully functional and saleable by Walgreens or another.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
44 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10    RECEIVED NYSCEF: 11/29/2021

186. A) Rather, the "and" in the Contractual definition of the Stick It Frames Mounting System was clearly meant to include the software and/or graphic file provided by Phillips to create the faux beveled mat appearance as a transferred bit of technology, licensed by Tracer from Phillips and upon which Royalties were due, if made and sold by Tracer.

B) Spiro represented to Phillips that Walgreens does not sell Product with the faux beveled mat appearance and thus that was another reason for the Product not to be royalty bearing.

C) This, too, is a falsehood as Walgreens does, in fact, make and sell Products with that faux beveled mat appearance.

D) And, Walgreens now offers many choices of colors for the faux beveled mat appearance.

187. Another ill-advised "defense" or argument presented by Tracer for the purpose of avoiding its obligations to report and pay Royalties is that the Stick It Frames Mounting System brought to it by Phillips pursuant to the Technology Transfer and License Agreement was not patentable.

188. This argument also cannot be sustained as Tracer represents to the public on its sales of packaging of the Technology Transfer and License Agreement that the technology is "Patented."

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
45 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10    RECEIVED NYSCEF: 11/29/2021

189. In addition, the express language of the Technology Transfer and License Agreement, negotiated by Tracer and its attorneys, indicates that Tracer is not responsible for Royalties, if the item is patented and expired, or patented and invalidated, or if a similarly fashioned competitive product, method or technology is commercially introduced in the marketplace and Tracer cannot stop that by infringement proceedings brought by Tracer, BUT ONLY IF TRACER ELECTS NOT TO CONTINUE SELLING THE PRODUCTS. (Emphasis added from the Technology Transfer and License Agreement).

190. Since Tracer still sells, at its option, the Products, even if there is no Patent protection for the Products, even if a US Patent were or is not issued, or if issued, held invalid, Tracer is responsible for Royalties if it still sells the Products. The Contract is clear on this "defense."

191. Tracer sells Products to Walgreens and directly to consumers and in its marketing and advertising represents that the Products are Patented.

192. Indeed, Tracer's website offering the sale of STICK AND SLIDE Products as TILEPIX states:

TilePix are like magic. Unlike frames that use sticky tape, TilePix just snap to the wall with a removable magnetic wall pad. With our Stick&Slide™ technology (yeah...yeah...it's patented ☐) you can easily reposition your TilePix and move them around. And because we don't use tape that quickly loses its stickiness, you can make endless adjustments for the perfect layout. Simple as that!

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
46 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM
NYSCEF DOC. NO. 10

INDEX NO. 63849/2021
RECEIVED NYSCEF: 11/29/2021

193. Tracer sells Products to Walgreens and Walgreens resells the same to consumers under the marks TILEPIX with STICK AND SLIDE technology.

194. On information and belief, a US Patent Application on the Stick It Frames Mounting System, filed by Tracer in at least the name of Charles Phillips, the inventor thereof and Plaintiff herein, is still pending in the US Patent Office.

195. Another Tracer suggested "defense" and argument as to why Tracer is not responsible for Royalties to Phillips nor reports of Net Sales of Products is that the TilePix products sold by Tracer are "substantially different from the Stick It Frames product originally provided by Phillips."  This, too, is fatally unsound and not supported by the facts.

196. Rather, the TilePix product sold by Tracer to Walgreens and resold by it to consumers comprises a picture frame with a magnetic material secured to its back which can be placed upon and slide vertically and horizontally, maintaining magnetic contact with a magnetic receptive material removable secured to a wall, via a foam material and adhesive.

197. The size of the frame, magnetic receptive material secured to the wall and to magnetic material adhered to the rear of the frame, as sold by Tracer

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
47 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM
NYSCEF DOC. NO. 10

INDEX NO. 63849/2021
RECEIVED NYSCEF: 11/29/2021

direct to consumers and by Tracer to Walgreens for resale to consumers are substantially the same as those presented by Phillips to Tracer.

198.  The frame profile sold by Tracer and Walgreens is nearly identical to that provided by Phillips to Tracer at the beginning of their discussions for a License, i.e., the frame profile sold to Walgreens is within fractions of a millimeter as the same was dictated by Walgreens.

199. The foam material used between the magnetic receptive material on the wall and the adhesive is substantially the same as that originally provided by Phillips to Tracer.

200. The adhesive used to hold the magnetic receptive material to the wall, removably, so that it will hold indefinitely and yet when desired to be removed, can be removed without paint damage to the wall, is substantially the same as originally provided by Phillips to Tracer.

201. And, the composition of the adhesive holding the magnetic material to the foam is also substantially the same as that originally provided by Phillips to Tracer.

202. Indeed, the microsphere adhesive from D&K Group, Inc. which is currently still in use in the Tracer TilePix products sold to Walgreens, is unique to D&K Group, Inc. and the identify and contact information as well as the formulation's specification was provided to Tracer by Phillips

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
48 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM     INDEX NO. 63849/2021
NYSCEF DOC. NO. 10                                        RECEIVED NYSCEF: 11/29/2021

in his transfer of know how and contacts and material specifications
pursuant to the Contract.

203.  As a consequence of the Contract and the Phillips-provided proprietary
information to Tracer regarding D&K Group, Inc. and its proprietary
adhesive product, Tracer was able to enter into an exclusive agreement for
D&K Group, Inc. to supply the same only to Tracer.

204. Any changes to the type, size, material of the frame, the magnetic
materials, the adhesives, and the foam, were purely at Tracer's discretion,
not required for utility at all, and reliance upon those distinctions, if any
exist, when the Technology Transfer and License Agreement is silent about
precise specifications, materials, etc. are "red herrings."  Tracer has sold
and continues to sell Products within the scope of the definition set forth in
the Contract.

205. Until Phillips brought his Phillips-invented new technology to Tracer,
neither Tracer nor Spiro, nor anyone else at Tracer, had ever considered a
photo or picture frame wall mounting system where the frame was
vertically and horizontally repositionable by sliding a magnet adhered to
the rear of the frame with respect to a selectively removable (without
damage to the paint on the wall) magnetic receptive material adhesively
held to the wall with a layer of foam between the magnetic receptive

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
49 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10    RECEIVED NYSCEF: 11/29/2021

material and the wall.  That is the essence of the Phillips-invented new technology.

206. During Phillips' tenure as an employee of Tracer, he provided technical specifications, drawings, names, contacts, and costs for substantially all supplies needed for the development of the Products.

207. Many of the components and suppliers of the components needed for the TilePix products now sold by Tracer are the same as those provided to Tracer by Phillips.

208. Tracer now argues in its "defense" to accounting for Net Sales of Products and its refusal to pay Royalties that there is prior art of others which teach the "unique and proprietary" system brought to Tracer by Phillips.

209. That defense, not surprisingly, is also absurd and is irrelevant to Tracer's duty to pay Royalties as set forth in the Agreement.

210.  Tracer is still pursuing a Patent Application filed in the US Patent Office where Phillips is a named inventor.

211.  Tracer performed a prior art search and obtained a Report from its attorneys indicating the potential patentability of the Phillips' technology. IF, as Tracer now suggests, the invention is unpatentable, then, pursuant to Tracer and its attorneys' Leason & Ellis's obligation of good faith and candor in dealing with the US Patent Office, the US Patent Application

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
50 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10                                        RECEIVED NYSCEF: 11/29/2021

should have been cancelled and abandoned as soon as Tracer and/or the attorneys knew of the prior art it now claims blocks the patentability of the invention.

212.  And, as set forth above, Tracer represents to the public the TilePix Products with STICK AND SLIDE technology are covered by a US Patent already (despite being advised of the Patent Mismarking many months ago).

213.  And, in any event, there was no representation by Phillips of the patentability of his technology before the execution nor within the Technology Transfer and License Agreement.

214.  Tracer continues to represent to Walgreens and to the consuming public the patentability of the technology by placing marking directly on its TilePix packaging indicating that the system is Patent Pending.

215.  As mentioned above, the Technology Transfer and License Agreement requires the payment of Royalties to Phillips, even if a patent is invalid, issued and expires, or cannot be enforced against a competitor, IF TRACER OPTS TO CONTINUE TO MAKE AND SELL THE PRODUCTS, as clearly it has by the sales of the TilePix products having STICK AND SLIDE technology to and through Walgreens and on its own website.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
51 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10                                      RECEIVED NYSCEF: 11/29/2021

216. Tracer, on its website, discusses "How does Tile-Pix work?"  It represents that the "STICK&SLIDE™ technology" (sic) (the system AND marketing term brought to it by Phillips) allows for easy repositioning and states in that marketing material,

"(yeah…yeah..it's patented)".

217. Further, Tracer represents in its materials the "TilePix magnetic mounting system uses a proprietary and patented STICK & SLIDE™ hanging technology. In its materials, Tracer represents:

"The centerpiece is an oversized, removable magnetic wall pad which holds the frame securely to the wall while enabling unlimited adjustments."

218. Phillips also provided to Tracer the concept of a faux bevel graphic around a print or photo for use in a consumer on-demand printing of the artwork using dye sublimation printers (commercially available at mass printers, like Walgreens, CVS, etc.) which then is provided with a clear overcoat laminate to enhance the illusion of the faux mat under a plastic or glass covering.  This look is that which a consumer is accustomed to seeing in a traditional quality framing of a photo or framed work or art.

219. The faux bevel graphic presently being utilized with dye sublimation and clear overcoat was new to Tracer and Walgreens and was initially brought to Tracer by Phillips.  This concept, brought to Walgreens by DNP (and

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
52 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021

NYSCEF DOC. NO. 10    RECEIVED NYSCEF: 11/29/2021

brought to Tracer by Phillips pursuant to the Contract) is currently being offered for sale by over 6,500 Walgreens stores, now in multiple colors.

220. Any changes required or sought by Tracer to the TilePix Products with STICK AND SLIDE technology, referred to in the Contract as the Stick It Frame Mounting System, were a consequence of wholly unnecessary changes desired by Tracer and do not change the basis of the technology provided by Phillips to Tracer pursuant to the Contract.

221.  Any changes to the TilePix Products with STICK AND SLIDE technology, originally brought to Tracer by Phillips, were unnecessary and form no defense to the duties and obligations of Tracer to account for Net Sales of Products and its duty to pay Royalties.

222. Tracer is guilty of breach of the Technology Transfer and License Agreement.


AS AND FOR A SECOND CAUSE OF ACTION –
MISAPPROPRIATION OF TRADE SECRETS

223. Phillips repeats and realleges the allegations set forth in paragraphs 1-221, as if fully repeated and realleged herein.

224. Tracer is guilty of misappropriation of Phillips trade secrets relating to his new FLOAT IT invention.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
53 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM

NYSCEF DOC. NO. 10

INDEX NO. 63849/2021

RECEIVED NYSCEF: 11/29/2021

## AS AND FOR A THIRD CAUSE OF ACTION – FALSELY ACCUSING PHILLIPS AND REPORTING A CRIME

225. Phillips repeats and realleges the allegations set forth in paragraphs 1-221, as if fully repeated and realleged herein.

226. As a consequence of Spiro's false and malicious reporting of a crime to Yorktown Police Department, Phillips has suffered embarrassment and a stain on his reputation.

227. As a consequence of Spiro's knowingly false reporting of a crime to Yorktown Police Department and retaining property which Spiro knew at the time was not his nor that of Tracer, claiming the same to be the property of Tracer, Spiro has slandered Phillips.

228. Phillips has been damaged by the malicious and ill-conceived acts of Spiro set forth above.

## AS AND FOR A FOURTH CAUSE OF ACTION

229. Phillips repeats and realleges the allegations set forth in paragraphs 1-228, as if fully repeated and realleged herein.

230. TRACER and Spiro's retention of Phillips' FLOAT IT hand sample was and is improper.

231. Tracer and Spiro's retention of Phillips' FLOAT IT sample constitutes a tort of wrongful conversion of Phillips' personal property.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
54 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM          INDEX NO. 63849/2021
NYSCEF DOC. NO. 10                                           RECEIVED NYSCEF: 11/29/2021

WHEREFORE: PLAINTIFF SEEKS JUDGMENT AGAINST TRACER

AND SPIRO AND PLAINTIFF DEMANDS AND IS ENTITLED TO:

A.      Damages in an amount not yet determined but to be determined at an

appropriate hearing or trial, plus costs and applicable interest, equal to $0.13 cents

for each 8" x 8" frame sold as a Product as set forth in the Contract;

B.      Damages in an amount not yet determined but to be determined at an

appropriate hearing or trial, plus costs and applicable interest, equal to 5% of Net

Sales to retailers of larger frame sizes than 8" x 8" frame Products set forth in the

Contract;

C.      5% of the Net Sales of Products sold to 3rd Parties (other than retailers) as set

forth and defined in the Contract;

D.      2 ½% of Net Sales of any size frame Products sold by Tracer directly to

consumers;

E.      Recovery of Phillips proprietary FLOAT IT sample improperly taken and

retained by Spiro and Tracer;

F.      A permanent  injunction against Spiro and Tracer in its continuation of any

marketing, advertising, sales nor distribution of any size frames of TilePix with

STICK AND SLIDE technology and/or Products as defined in the Contract;

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
55 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM   INDEX NO. 63849/2021
NYSCEF DOC. NO. 10                                      RECEIVED NYSCEF: 11/29/2021

G.   A permanent injunction against Spiro and Tracer from using, making,

selling, advertising, offering for sale or otherwise disseminating any trade secrets

or technology provided by Phillips to Spiro and Tracer concerning the FLOAT IT

technology as it relates to a wall mounted photo panel system conceived of and

invented by Phillips.

H.   Punitive damages in an amount to be determined but no less than $250,000

against Spiro for the false reporting of a crime to the Yorktown Police Department

involving Phillips and his own invention and sample;

I.   Costs of the suit, pre-and post-judgment interest on the Damages, and

reasonable attorneys' fees incurred by Phillips;

J.   Such other and further relief as this Court may deem just and proper.

Dated: Armonk, Westchester County, New York
/s/ Andrew S. Langsam, NY Bar 1603505

September 27, 2021          Law Office of Andrew S. Langsam, PLLC
                            28 Limestone Road
                            Armonk, New York 10504
                            914 450-6651
                            ASLangsam@GMAIL.COM
                            Attorney for Plaintiff, Charles Phillips

Plaintiff demands Trial By Jury.

Charles Phillips

Charles Phillips, Plaintiff

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
56 of 78

FILED: WESTCHESTER COUNTY CLERK 10/04/2021 04:47 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 10    RECEIVED NYSCEF: 11/29/2021

Plaintiff's Verification:

I, Charles Phillips, am the Plaintiff in the above captioned action. I swear, under oath and subject to the penalties of perjury, that I have reviewed the Complaint, that the allegations contained herein are true, that I have personal knowledge of the facts and allegations stated herein, that I have further investigated the facts and charges which may be beyond my personal knowledge and stated against the Defendants, Tracer Imaging, Inc. and Steven Spiro and I believe them to be true and those allegations based on information and belief, are based on a good faith search and opinion as to their veracity.

_Charles Phillips_    9/28/21

Charles Phillips    Date

Final 9/28/2021

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
57 of 78

INDEX NO. 63849/2021
NYSCEF DOC. NO. 11                                          RECEIVED NYSCEF: 11/29/2021

STATE OF NEW YORK
SUPREME COURT, COUNTY OF WESTCHESTER

_____

CHARLES PHILLIPS,

      PLAINTIFF,               Index Number: $63849/2021$

      Against

TRACER IMAGING LLC and
STEVEN SPIRO             **SUMMONS**

      DEFENDANTS

_____

TO THE ABOVE NAMED DEFENDANT:

YOU ARE HEREBY SUMMONED to answer the Verified Complaint in this
action, served herewith, and to serve a copy of your Answer, or if the Complaint is
not served with this Summons, to serve a Notice of Appearance on the attorney for
the Plaintiff within 20 days after service of this Summons, exclusive of the days of
service (or within 30 days after service is complete if this Summons is not
personally delivered to you within the State of New York). In case of your failure
to appear or answer, judgment will be taken against you by default for the relief
demanded in the Verified Complaint. Westchester County is designated as the
place of trial pursuant to CPLR Section 503(a) based on the fact that the
Defendants, the Plaintiff and a substantial part of the events giving rise to the
claims asserted in the Verified Complaint reside and occurred there, respectively,
i.e., in Westchester County, New York.

Attorney for Plaintiff
               *Andrew S Langsam*
/s/ Andrew S. Langsam        Dated: September 28, 2021
Law Office of Andrew S. Langsam, PLLC
28 Limestone Road
Armonk, New York 10504
914 450 6651 ASLangsam@GMail.com

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
58 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM     INDEX NO. 63849/2021

NYSCEF DOC. NO. 3                                                    RECEIVED NYSCEF: 09/28/2021

# Charles A. Phillips
### BSIE  MBA

White Plains, NY  10606  *  914-420-7125  *  NovateOne@gmail.com

An Engineering professional with 31 years of product development ,manufacturing and distribution experience, specializing in continuous process and product improvement initiatives. Including engineering facilities planning, lean manufacturing systems design, budgeting, forecasting, inventory control, staffing, Kaizen continuous process improvement and quality control programs. Project management of major new distribution and manufacturing facilities start-ups, requiring engineering all phases of operations including CAD facilities design, equipment evaluation and procurement, lean manufacturing product flow design, budgeting and establishment of quality control program for all products/processes. Proven ability to complete complex projects ahead of schedule and under budget though critical strategic planning and development of strong implementation teams.

## CORE COMPETENCIES

- Formulating and implementing lean manufacturing continuous improvement programs and quality improvement processes, resulting in increased productivity / service, cost reductions and improved consistent quality.
- Very comfortable in manufacturing / distribution environments with ability to rapidly identify, implement and monitor work method improvements.
- Kaizen / Lean Manufacturing training and implementation experience.
- Extensive Quality Control program initiatives.
- Strong communication skills with employees and vendors at all levels.
- Extensive experience in ergonomic workplace design.
- Self-motivated with a strong sense of purpose and ability to rapidly identify and improve industrial processes and procedures.
- Operational performance improvements by work methods analysis and optimization.
- High mechanical aptitude and experience around manufacturing machinery.
- Ability and experience to design specialized machinery when not commercially available.
- Driven mindset for continuous process improvement initiatives for products and processes.
- Experienced at developing workplace safety programs.
- Strong computer skills with proficiency in Excel, Power Point, Word and AutoCAD.

## PROFESSIONAL EXPERIENCE

**The Novate Company**              White Plains              6/2001- Present
  ( self employed)

Product Development for and licensing to :

- Velcro Inc  - Manchester, NH   ( Microsphere adhesive wall mounting system )
- MCS Industries -  Easton, PA   ( Picture framing products )
- Amscan / Party City Inc - Elmsford, NY  ( Patented Metallic balloon décor )
- Crayola Inc / Smith & Binney -  Easton, PA  ( Inflatable coloring product )
- Tec-Pac Llc_- Edison, NJ  ( Packaging innovation )
- Disney Inc – Anaheim, CA  (Patented edible printed decorations )

Developed, Patented and Licensed a variety of different products for Industry.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
59 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 09/28/2021

**Amscan Inc.**                 Elmsford, NY                          5/1991 - 5/2001

- Sr Project Engineer – Engineering Planning, budgeting, and project management for the establishment and start-up of manufacturing facilities in Harriman, Newburgh, Kentucky and Mexico totaling 750K SF. Extensive CAD design, material handling automation, new packaging systems, raw materials and finished goods automation. Established Quality Control programs for products produced at all facilities. Lean manufacturing principals implemented into all phases of workflow design.

- Plant Management - Engineered and project managed the establishment of a 300,000 SF Distribution Center for paper and plastic tableware products in Newburgh. Coordinated and managed all phases of the facility design, product flow, conveyor systems / material handling, equipment specifications, budgeting, procurement, finished good transportation planning and staffing of a 50 member team to operate the facility. Stayed on-site to manage the 50 member team for 2 years and implement *Kaizen* principals to improve distribution operations. Key to the program was newly instituted weekly meeting open to all employees to communicate their ideas for improving operations.

- Manufacturing Engineering – Established a high volume 6-color printed paper cup manufacturing operation / department for Amscan in Harriman, NY. Preformed ROI analysis to justify establishment of in-house cup manufacturing. Evaluated and specified procurement of high speed PMC cup machinery and engineered, fully automated packaging and labeling lines utilizing lean manufacturing principals.  Hired and trained cup department personnel. Established budgets, quality control procedures, inventory control systems, spare parts program and preventive maintenance program for newly formed cup department. Implemented lean manufacturing / Kaizen principals into all phases of manufacturing workflow design and processes to establish Amscan as the lowest cost and highest quality manufacturer in the marketplace.

  Following Kaizen principles, developed a unique *lean manufacturing* cup manufacturing process to increase machine efficiency, improve quality and lower manufacturing costs. The process was subsequently utilized throughout the cup manufacturing industry and cup machine manufacturers redesigned their machines accordingly.

  Developed centralized purchasing program and process improvement system for Amscan manufacturing facilities resulting in 1.2 million dollars annual savings in packaging costs (22%)

  Achieved major corrugated packaging cost savings through establishment of reusable in-house packaging.

**Leonard Baking Enterprises**          Port Chester, NY

**Plant Manager** - Developed and Patented an edible 4 color printed cake decorating product. The product was successfully marketed nationally with character licenses to retail and wholesale bakeries as well as to Disney Entertainment Inc. The company was eventually acquired by Amscan Inc.

- Engineered and manufactured custom equipment to produce the confectionary product.
- Engineered an integrated manufacturing facility.
- Developed and field tested unique packaging for Caketops product.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
60 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 3                                          RECEIVED NYSCEF: 09/28/2021

**Leonard Baking Co.**                  New York, NY

<u>**Operations Manager**</u> – Managed daily operations of my family's retail and wholesale bakery operation which served the greater New York City area. Coordinated material requirement planning activities, inventory control, budgeting, production planning, personnel management, customer relations and capacity planning and distribution planning delivery of finished goods throughout Manhattan . ( 15 member team )

- Reengineered production area resulting in improved manufacturing efficiencies and reduced production costs.


**Tracor Inc.**                         Rockville, MD

<u>**Engineering Project Manager**</u> - Tracor Inc.  Facilities and Marine Engineering Department in support of US Naval Operations.

- Naval Submarine Support Facility, New London, CT- Managed a team of engineers in the design and implementation of $10.1 million maintenance facility modernization program. Responsible for workflow analysis, facilities design, strategic planning, budgeting and interfacing with Navy Management.
- Pearl Harbor Submarine Base – Engineered a major redesign of Submarine maintenance facilities after conducting work-flow analysis, material handling studies and ergonomic workspace  optimization.


## EDUCATION

Lehigh University – Bethlehem, PA
**Masters of Business Administration** – Finance and Management

Lehigh University – Bethlehem, PA
**Bachelor of Science** – Industrial Engineering

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
61 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM     INDEX NO. 63849/2021

NYSCEF DOC. NO. 4                                      RECEIVED NYSCEF: 09/28/2021

# TECHNOLOGY TRANSFER AND LICENSE AGREEMENT

## BY AND BETWEEN

## TRACER IMAGING LLC,

## AND

## CHARLES PHILLIPS

This TECHNOLOGY TRANSFER AND LICENSE AGREEMENT ("Agreement"), dated as of January 1, 2020, is between Tracer Imaging LLC, a Delaware corporation ("Tracer"), and Charles Phillips, and individual residing in White Plains, NY ("Phillips") Tracer and Phillips each may be referred to in this Agreement individually as a "Party" and collectively as the "Parties."

### RECITALS:

**WHEREAS** Phillips is the owner of certain technology and Intellectual Property Rights relating thereto concerning the Stick-it Frames Mounting System or The Technology (herein referred to as the "Transferred Technology");

**WHEREAS** Phillips desires to transfer to Tracer, and Tracer desires to acquire from Phillips the Transferred Technology for the purpose of allowing Tracer to develop and market Products using the Transferred Technology; and

**NOW THEREFORE,** in consideration of the mutual covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Tracer and Phillips hereby agree as follows:

1. **Definitions:** As used herein, capitalized terms have the respective meanings set forth in Schedule A attached hereto and incorporated herein by reference.

2. **Transfer of Transferred Technology:** In accordance with the terms of this Agreement, Phillips hereby assigns and transfers to the Tracer, its successors, and assigns, all worldwide right, title and interest to all Transferred Technology, including, without limitation any and all rights under patent, trademark, copyright and trade secret law, any registrations and applications relating to such

*Charles Phillips*

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
62 of 78

INDEX NO. 63849/2021
RECEIVED NYSCEF: 09/28/2021

Transferred Technology; any related renewals and extensions relating thereto, and all works based upon, derived from or incorporating the Transferred Technology; and any and all of tangible or physical assets and equipment relating to The Technology.

3. **Securing Intellectual Property Rights:**

   a. For avoidance of doubt, Tracer shall have the sole right to secure intellectual property protection on the Transferred Technology, including, but not limited to, by filing for a registration of copyright or for patent protection on any and all inventions, improvements, or discoveries developed or otherwise acquired by Tracer relating thereto.

   b. Phillips agrees to assist Tracer, or its designee, at Tracer's expense, in every proper way, to secure Tracer's rights in the Transferred Technology and any Intellectual Property Rights relating thereto in any and all countries, including the disclosure to Tracer of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Tracer shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to Tracer, its successors, assigns and nominees the sole and exclusive rights, title and interest in and to such Transferred Technology and Intellectual Property Rights. Phillips further agrees that it is Phillips's, or its employees, contractors, members or shareholders, continuing obligation to execute or cause to be executed, when it is in Phillips's power to do so, any such instrument or papers necessary to perfect such rights granted under this Agreement, even in the event of a termination of this Agreement.

   c. Charles Phillips shall be listed as a named inventor on any patent application where, under the U.S. laws regarding inventorship, he is deemed to be an inventor.

Charles Phillips

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
63 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 4                                          RECEIVED NYSCEF: 09/28/2021

4. **Royalties:**

   a. In exchange for the rights granted herein, Tracer shall pay to Phillips a
   royalty rate of $0.13 per 8" x 8" frame of Products sold to retailers, 5% of
   Net Sales of larger frame sizes of Products sold to retailers, and 3rd party
   orders fulfilled. Tracer shall pay to Phillips2.5% of Net Sales of any size
   frames of Products which are made directly to consumers. Payments of
   such royalties shall be made on a quarterly calendar basis, within 60 days
   of the close of each quarter, calculated on payments actually received by
   Tracer during the prior quarter for the Products' sales, minus any returns
   or charge backs. If Tracer elects to sell Stick It Frames components
   separately, incorporate into other products, or sublicense technology, then
   Parties agree to execute another agreement.

   b. In addition, as further consideration for the rights granted hereunder, and
   including payment, Tracer shall make a one-time payment of $25,000 as
   advance of future royalties to Phillips within 30 days of the date of this
   agreement.

5. **Delivery:** Promptly after the execution of this agreement, Novate shall deliver to
   Tracer copies of all drawings and documents in Phillips's possession or control
   relating to the design, know-how, trade secrets and manufacture of the
   Technology.

6. **Representations and Warranties:** Phillips represents and warrants to Tracer
   that:

   a.      Phillips is the exclusive owner of, and has good, valid and marketable title
   to, the Transferred Technology free and clear of all liens;

   b.      There are no threatened or pending claims that the Transferred
   Technology infringes upon or misappropriates the rights of any third party nor is
   infringed upon or misappropriated by any third party;

   *Charles Phillips*

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
64 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 4                                                         RECEIVED NYSCEF: 09/28/2021

c.    There has been no unauthorized use by, disclosure to or by or infringement, misappropriation or other violation of any of the Transferred Technology by any third party and/or any current or former officer, employee, independent contractor, consultant or any other agent of Phillips.

7.    **Books and Records:** Tracer shall maintain complete and accurate records and books of account in sufficient detail and form to enable determination and verification of the unit (to retailers) and dollar (direct to consumer) sales of The Technology. Novate shall have the right, at its expense, to audit Tracer's books and records solely for the purpose of verifying these amounts during the term of this Agreement, but no more than once per calendar year. Tracer will provide written verification with each Royalty Payment.

8.    **Confidentiality:** The terms of this Agreement are confidential. Notwithstanding the confidentiality of this Agreement, the Parties may disclose the existence (but not any of its terms) of this Agreement to any third party where the third party is bound by a confidentiality obligation to maintain the in confidence the existence of this Agreement. In the event that a Party seeks to disclose the existence of this agreement to a third-party not bound by a confidentiality obligation, such a disclosing Party may disclose the existence of this agreement by providing notice in writing to the other Party at least 5 days in advance of such disclosure and makes a good faith effort, in consultation with the other Party, to take appropriate measures to ensure that the terms of this Agreement remain confidential to the extent permitted by law. Notwithstanding the foregoing, either party may disclose the terms of this Agreement as necessary to enforce or perfect any right or obligation under this Agreement.

9.    **Term and Termination:**

9.1    The Royalty Payments may terminate upon the first of any of the following events to occur:

a. By mutual consent of the parties in writing;

*Charles Phillips*

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
65 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 4                                                      RECEIVED NYSCEF: 09/28/2021

b. All patents filed on the Transferred Technology ("Patent Rights") have
   expired and if Tracer elects not to continue selling the Products;

c. All material patent claims of the Patent Rights are determined, in the
   opinion of an experienced patent attorney approved by Phillips and Tracer
   to be invalid or unenforceable and if Tracer elects not to continue selling
   the Products; or

d. A similarly fashioned competitive product, method or technology is
   commercially introduced in the marketplace that could not be deterred by
   best-efforts enforcement/infringement proceedings brought by Tracer
   against the competitive product, method or technology where such
   proceedings are made in reliance in full or in part upon the Patent Rights
   and if Tracer elects not to continue selling the Products.

e. In the event of termination, Tracer shall assign all the Transferred
   Technology back to Phillips, and Phillips will bear the expenses of
   effecting that transfer, including paying for IP expenses.

f. Notwithstanding the above termination conditions, The Royalty Payments
   shall continue to be paid by Tracer to Phillips in the amounts specified in
   paragraph 4(a) for as long as Tracer sell the Products.

   9.2    Either Party may terminate this Agreement in the event of a material
breach by the other Party that is not addressed elsewhere in this Agreement, provided
only if the breaching Party is given notice of the breach and a reasonable time, not to
exceed thirty (30) days from the date of receipt of such notice, in which to cure such
breach.

10. **Change of Control:** In the event of a Change of Control in Tracer's ownership,
Tracer has the right if it so elects to pay a one-time buyout ("One Time payment") of any
future royalty liability in the higher amount of any of the below four options;

(a) the sum of royalties paid over the three previous years or;

*Charles Phillips*

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
66 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 4                                                    RECEIVED NYSCEF: 09/28/2021

(b) if in the event that there is less than three years, then the earned monthly royalties averaged and multiplied by thirty-six or;

(c) the last twelve months multiplied by three or;

(d) $1,000,000

Upon receipt of the One Time Payment, the Royalty payment obligations under Section 4 of this Agreement shall cease. In the event of an independent sale of the Transferred Technology and not due to any of the terms defined in Change of Control, Phillips shall be due a 5% royalty of the transaction price of the sale of the Transferred Technology.

11. **Miscellaneous:** This Agreement may not be amended except by written agreement signed by both of the parties. This Agreement is the complete and exclusive statement of the mutual understanding of the parties and supersedes all previous written and oral agreements and communications relating to the subject matter of this Agreement. The Parties agree that this Agreement will be governed and construed by the laws of the State of New York, excluding its conflict of law rules and each Party hereby consents and submits to the personal jurisdiction of federal and state courts of New York for the purposes of adjudicating any dispute regarding this Agreement. The Parties agree that this Agreement is the entire agreement regarding the subject matter thereof and there are no promises, terms, conditions or obligations, oral or written, express or implied, between the Parties relating to the subject matter hereof other than those contained herein. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. If any provision of this agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other part or provision of this Agreement. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective permitted successors and their assigns and any new or change in Tracer's ownership. Phillips may not assign its right under this Agreement absent prior written consent of Tracer. Any amendment to the terms of this Agreement must be made in writing and agreed to by the Parties.

*Charles Phillips*

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
67 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM   INDEX NO. 63849/2021
NYSCEF DOC. NO. 4                                           RECEIVED NYSCEF: 09/28/2021

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed in duplicate originals by their duly authorized representatives.

TRACER IMAGING LLC

CHARLES PHILLIPS

By:

By:

*Charles Phillips*

Name:   Steven Spiro

Name:   Charles Phillips

Title:CEO

Title:   Stick-it Inventor

Tracer Imaging LLC

26 New York Avenue South

712 Kitchawan Rd
Ossining NY

White Plains NY 10606

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
68 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 4                                                    RECEIVED NYSCEF: 09/28/2021

## Schedule A

### Definitions

"**The Technology**" shall mean public and nonpublic technical or other information, trade secrets, know-how, processes, formulations, concepts, ideas, business or scientific plans, depictions, customer lists and any other written, printed or electronically stored materials, and any and all other Intellectual Property Rights, including patents, patent applications, trademarks and trademark applications of any nature whatsoever that relates to the Stick It Frames Mounting System.

"**Stick It Frames Mounting System**" shall mean a magnetic mounting system on frames of various sizes and software to create a "faux" beveled mat appearance on a printed image, where such a mounting system includes one or more of (1) a flexible ferrous (magnetic receptive) flexible material with a "special" adhesive that is both repositionable but will stay on the wall indefinitely if desired and if removed, it will not remove the paint from the wall; and (2) a flexible magnetic material that is adhered to the back of a frame, as specified in the technical documents provided by Novate under upon execution of this Agreement.

"**Products**" shall mean commercial products that incorporate the Stick It Frames Mounting System.

"**Trade Secrets**" shall include any technical or business information, any invention, equipment or apparatus, method or process, technology, know-how, trade secret, drawing, data, evaluation, specifications, quality and inspection standards, sales literature, report, business plan, memorandum, market study, customer lists, training materials, computer program or software (including both source and object code), or any other document or thing which is in whole or in part confidential, proprietary, or

*Charles Phillips*

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
69 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM   INDEX NO. 63849/2021
NYSCEF DOC. NO. 4                                       RECEIVED NYSCEF: 09/28/2021

secret and which is owned or controlled by, licensed or assigned to Novate or for which Novate has the right to grant assignment thereon during the term of this Agreement.

**"Change in Control"** means (a) a merger, consolidation or other reorganization to which Tracer is a party, if the individuals and entities who were members (or others that hold an ownership interest) of Tracer immediately prior to the effective date of the transaction have "beneficial ownership" of less than fifty percent (50%) following the effective date of the transaction, (b) acquisition by any entity or group of direct or indirect beneficial ownership in the aggregate of the then issued and outstanding units (or other ownership interests) of Tracer in a single transaction or a series of transactions representing in the aggregate fifty one percent (51%) or more of the total combined voting power of Tracer, or (c) a sale of all or substantially all of Tracer's assets.

**"Intellectual Property Rights"** means any and all intellectual property rights worldwide arising under statutory or common law, including, without limitation, that which is acquired or obtained under a contract with a third party, and whether or not perfected, comprising any of the following: (a) copyrights, copyright applications, copyright registrations and any rights on libraries and computer programs ("Copyrights"); (b) mask work rights and mask work registrations; (c) designs, inventions, discoveries and rights arising from or related to all classes or types of provisional patent applications, patents, utility models and design patents (including, without limitation, originals, divisions, continuations, continuations-in-part, extensions, reexaminations or reissues) issued or issue-able thereon, and applications for these classes or types of patent rights ("Patents"); (d) any right analogous to those set forth herein in foreign jurisdictions; (e) any renewals or extensions of the foregoing (as and to the extent applicable) now existing, hereafter filed, issued or acquired; (f), trade secrets and know-how; and (g) any trademarks, trade dress or source designators.

*Charles Phillips*

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
70 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM    INDEX NO. 63849/2021

NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 09/28/2021

# STICK-IT FRAME

Used for Jan 6, 2020 Provisional Patent Filed



Wall locking texture molded into plastic

Magnetic Rubber

Molded holes for plastic peg for desktop display or wall hanging on hook

Wall Board / Sheetrock



Wall gripping molded texture

Corrugated Backer Board

Mounting Board w/adhesive

Photograph

Repositional Adhesive
Foam rubber
Magnetic receptive rubber
Magnetic rubber

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
71 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO.                                         EF: 09/28/2021

✕  🔒 **TilePix**
tilepix.com    ⌁  🔖  ⋮

Hey
# Welcome

☰



STICK&SLIDE
PATENTED MAGNETIC TECHNOLOGY

 TilePix

## Build beautiful memory walls in minutes.

Just stick it...and slide it.
No nails. No tape. No damage.

**Get Started!**

Take 50% off Your First Order!

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
72 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM      INDEX NO. 63849/2021
NYSCEF DOC. NO. 6                                    RECEIVED NYSCEF: 09/28/2021

# ⌣ilePix™ Revolutionizes Wall Décor

Hang Vibrant Memory Walls in Minutes with Innovative Magnetic Mounting System

NEWS PROVIDED BY
**TilePix →**
Dec 08, 2020, 09:05 ET

OSSINING, N.Y., Dec. 8, 2020 /PRNewswire/ -- Tracer Imaging today proudly announced the release of TilePix™ for iOS. TilePix are beautiful 8" x 8" photo tiles that simply snap to the wall with a revolutionary magnetic mounting system, ensuring a professional looking gallery wall in minutes. Unlike other photo tiles that attach to directly with tape, TilePix can be infinitely and effortlessly repositioned. And with the TilePix magnetic hanging system, it's quick, safe, and fun swap photos around the house, giving living areas a fresh look. No tape. No nails. Just memories.

Continue Reading

∨

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
73 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM          INDEX NO. 63849/2021

NYSCEF DOC. NO. 6                                            RECEIVED NYSCEF: 09/28/2021





TilePix Revolutionizes Wall Decor

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
74 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM     INDEX NO. 63849/2021
NYSCEF DOC. NO. 6                                       RECEIVED NYSCEF: 09/28/2021



TilePix Revolutionizes Wall Décor

The TilePix magnetic mounting system uses a proprietary and patented Stick&Slide™ hanging technology. The centerpiece is an oversized, removable magnetic wall pad which holds the frame securely to the wall while enabling unlimited adjustments. As the wall pad is 44% larger than the magnet on the back of the frame, the frame can be moved widely in all directions while maintaining complete contact with the wall pad. No other photo tile offers this level of creative control.

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
75 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM        INDEX NO. 63849/2021
NYSCEF DOC. NO. 7                                          RECEIVED NYSCEF: 09/28/2021

TilePix is also designed and lab tested to work on a wide variety of wall surfaces. For smoother walls with glossier finishes, the removable adhesive on the wall pad is all that's required for years of enjoyment. With an enhanced fastener, TilePix even works on rougher walls or flatter finishes, surfaces that often cause other tape-based photo tiles to fail.

"Photo tiles are an affordable way to surround yourself with life's little moments," said Steven Spiro, Chief Executive Officer of Tracer. "But the photo tile business is overcrowded today with products which are virtually the same. We saw a massive opportunity to bring a truly innovative product to market with a delightful customer experience. We're thrilled to introduce the world to TilePix."

TilePix are built to last. The exceptionally high-quality frames are sustainably made in the USA with more than 50% recycled material. Images are printed with the highest quality inks and papers to preserve memories. TilePix frames are available in black with frameless and white frames arriving in January 2021.

Ordering TilePix through the new iOS app couldn't be easier. The app is designed to help customers lay out their memory walls, not just buy frames. Customers can apply color or black-and-white filters in one tap, and there are two matte colors to choose from. In another first, users can pick up smaller TilePix orders at their local Walgreens same day, or have larger orders delivered via FedEx, with free shipping. TilePix stands behind every order with an unconditional money back guarantee.

For those fatigued by the endless barrage of photo tile promotions, TilePix is pleased to offer a simple, transparent alternative. With everyday savings from 10% to 40% based on quantity purchased, and free shipping on every order, customers are always in control of how much they save. TilePix start at $14 but can cost as little as $8.40. For customers not ready to buy many TilePix, they can still save 40% on every order with the TilePix+ (TilePix Plus) annual membership. TilePix+ members also get 9 free TilePix which can be redeemed anytime during their membership. The TilePix+ Annual Membership is $99 and pays for itself after just 8 TilePix.

About Tracer

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
76 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM          INDEX NO. 63849/2021

TilePix presents memories. We're wall décor innovators, with 35 patents and counting. The
photo and décor products we've invented are sold in more than 7,000 retail locations around
the country including Walgreens and RiteAid. Our high quality products include canvas, mini-
nvas, custom floating frames, lenticular prints, metal prints, and board print products.

We're the classic story of New York spirit, innovation and grit. The company was founded in
2004 in the suburbs of New York City. While our roots were in 3D lenticular printing, we've since
grown heavily into retail photo products. TilePix is our first direct-to-consumer offering.

Contact:
Ashley Thomas
2242345232
260891@email4pr.com

SOURCE TilePix

Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
77 of 78

FILED: WESTCHESTER COUNTY CLERK 09/28/2021 07:23 PM    INDEX NO. 63849/2021
NYSCEF DOC. NO. 7                                                      RECEIVED NYSCEF: 09/28/2021



Exhibit 1 to Mixtiles' Answer, Aff. Def, Counterclaims
78 of 78